COMMONWEALTH vs. ELIZABETH AVERILL & others.[1]

Plymouth.  June 11, 1981. — July 15, 1981.

Present: PERRETTA, ROSE, & KASS, JJ.

*Trespass.  Necessity.*

At the trial of complaints charging trespass, a claim of necessity, based on
the defendants' belief as to the dangers of nuclear energy, was not
available to defendants who, after distributing leaflets and carrying
placards with anti-nuclear messages within a private park maintained
as part of a nuclear energy facility complex, were arrested after they
refused requests to leave the park at its closing time.  [261-263]

COMPLAINTS received and sworn to in the Third Ply-
mouth Division of the District Court Department on Octo-
ber 10, 1978.

On appeal to the Superior Court the cases were tried
before *Abrams*, J.

*Benjamin Hiller* for the defendants.

*Rosemary Ford*, Assistant District Attorney, for the Com-
monwealth.

KASS, J.  To charges of trespass (G. L. c. 266, § 120), the
defendants raised the ancient (see the Book of Jonah, but
contrast *The Queen* v. *Dudley & Stephens*, 14 Q.B.D. 273
[1884]) defense of necessity.  Shortly after the beginning of
the fourth day of trial, a Superior Court judge ruled that the
defense of necessity was "unavailable to the defendants in
the circumstances of this case" and that the evidence of the
defendants' "belief as to the dangers of nuclear energy is in-
admissible."

On the basis of evidence received prior to that point in the
proceedings, it was uncontested that on October 7, 1978, a

[1] Debra S. Lang and Denise Levertov.  Two of the original five defend-
ants withdrew their appeals.

Saturday, the defendants had been distributing leaflets which described hazards to health and life of nuclear generating facilities in general and the Boston Edison Company's Pilgrim nuclear plant in Plymouth in particular. This activity occurred within the boundaries of a private park, maintained as part of the nuclear facility complex, which Boston Edison kept open to the public during daylight hours. The defendants also carried placards with antinuclear messages and discussed the risks of nuclear power with any persons in the park who cared to listen. Particularly, they cautioned people fishing against eating anything caught from waters around the plant because, the defendants said, it might be hot with radioactivity. The chief security officer for Boston Edison announced the closing of the park at 6:00 P.M. and asked the defendants to leave when they made no move so to do. They declined, and the Boston Edison security officer called the Plymouth police department for assistance. Five or six Plymouth police officers arrived on the scene shortly after 6:00 P.M. The sergeant in charge of the Plymouth police detail warned the defendants they would be arrested if they did not honor Edison's request to leave the park, a request which had been repeated in his presence. The defendants sat on the ground and were arrested as, according to their testimony, they expected they would be.

What occurred that October 7 was an act of civil disobedience. Classically, the actors must accept the penalty for their violations of law, i.e., a jail sentence or whatever less draconian sanction the law imposes.[2] Attempts to eliminate this disagreeable consequence of civil disobedience enjoy neither novelty nor a record of success. See *United States* v. *Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969), cert. denied, 397 U.S. 910 (1970); *United States* v. *Kroncke*, 459 F.2d 697, 702-704 & nn. 8 & 9 (8th Cir. 1972); *United States* v. *May*, 622 F.2d 1000, 1008-1010 (9th Cir.), cert. denied sub

---

[2] See, e.g., King, Why We Can't Wait 86 (1963): "One who breaks an unjust law must do it openly . . . and with a willingness to accept the penalty."

nom. *Phipps* v. *United States,*     U.S.     (1980); *State* v. *Dorsey,* 118 N.H. 844 (1978), habeas corpus granted on other grounds sub nom. *Tsoumas* v. *New Hampshire,* 472 F. Supp. 1134 (D. N.H. 1979). An essential element of the justification defenses, e.g., duress, necessity and aiding another, is that the actor reasonably anticipated a direct causal relationship between his act and the avoidance of harm. *Commonwealth* v. *Robinson,* 382 Mass. 189, 199-200 (1981). *Commonwealth* v. *Thurber,* 383 Mass. 328, 330-331 (1981). *United States* v. *Simpson,* 460 F.2d 515, 518 (9th Cir. 1972). See *Commonwealth* v. *Brooks,* 99 Mass. 434, 436-437 (1868). For this reason the defense of necessity generally arises in emergency situations, when the threatened disaster is immediate. LaFave & Scott, Criminal Law § 50, at 387-388 (1972). See *Commonwealth* v. *Thurber, supra* at 330. Compare *Commonwealth* v. *Martin,* 369 Mass. 640, 648-649 (1976), upon which the defendants mistakenly rely, in which it was held that the defendant was entitled to a jury instruction on a justification defense (coming to the aid of another) in the context of a prison affray. In that case, if the action was justified at all, it was justified by the heat of battle.

None of the defense witnesses (they were all defendants) who testified expected the trespass to have any immediate consequences in reducing the danger apprehended. Indeed, the park was fenced off from the nuclear facility itself and, so far as immediate messages were concerned, all persons, save for the defendants and the officers who came to arrest them, had left the park. The only impact they could hope to make on the general public was through the news of their arrest. However that might assist their cause in the long run, publicity designed to marshal public opinion could not extinguish an immediate peril, if there was one. The constitutional right to persuade is not without limitation as to time and place. See *Commonwealth* v. *Egleson,* 355 Mass. 259, 263-264, appeal dismissed and cert. denied, 395 U.S. 336 (1969). The common law defense of necessity deals with obvious and generally recognized harms, not

with those which are debatable and, indeed, the subject of legislation and government regulation. *State* v. *Dorsey,* 118 N.H. at 846-847.

We find to be without merit the defendants' next argument, that Boston Edison's ownership of the property was insufficiently proved. The testimony of Boston Edison's chief security officer was sufficient to permit the jury to infer that the property belonged to Boston Edison, and certainly that it did not belong to the defendants. *Commonwealth* v. *Patti,* 10 Mass. App. Ct. 857 (1980). We consider equally unmeritorious the defendants' final argument: that the opportunity afforded them to establish a defense of necessity earlier in the trial misled the defendants into abandoning other defenses. Putting aside that the trial judge, on the record, had reserved the right to decline to hear more evidence on the necessity defense, if he concluded on so much of the evidence as he did hear that the defense would not be available, the defendants have not identified any defense which they were foreclosed from establishing. Indeed, the trial judge expressly gave the defendants' counsel leave to recall any government witnesses. Three of the four defendants who testified did so after the judge had ruled he would hear no more on the justification issue.

*Judgments affirmed.*