STATE of Maine

v.

Robert L. FARNHAM.

Supreme Judicial Court of Maine.

Argued May 8, 1984.
Decided July 17, 1984.

Margaret J. Kravchuk, Dist. Atty., Michael Roberts (orally), Gary F. Thorne, Asst. Dist. Attys., Bangor, for plaintiff.

Peter K. Baldacci (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In a jury trial in Superior Court (Penobscot County) defendant Robert Farnham was convicted of gross sexual misconduct, Class A, 17-A M.R.S.A. § 253 (1983 & Supp. 1983–1984) and sexual abuse of a minor, Class D, 17-A M.R.S.A. § 254 (1983), and sentenced to seven years in Maine State Prison.[1] In his appeal he attacks only that seven-year prison sentence, arguing that the presiding justice took an improper factor into consideration in imposing sentence. Finding no error in the sentencing proceeding, we affirm.

## I.

After being sentenced, defendant filed in Superior Court both a notice of appeal and also a motion for correction of sentence pursuant to M.R.Crim.P. 35. Although the Superior Court expressed doubt as to whether a motion for correction of sentence was a proper procedural vehicle for challenging the legality of its sentencing decision, it nevertheless heard and denied the motion. Defendant subsequently appealed the denial of that motion. That appeal as well as defendant's appeal of the judgments of conviction are now before this court.

## II.

■ Before reaching the merits of defendant's claim of error, we must address two preliminary issues arising by the procedural context in which the appeal reaches this court: 1) whether defendant may raise on direct appeals from his conviction and the denial of his motion for correction of sentence the claim that the trial justice relied upon an improper consideration in imposing sentence; and 2) whether a motion for correction of sentence under M.R. Crim.P. 35 was a proper procedural vehicle for raising that claim of error in the Superior Court. It is well established that the Law Court's "appellate role is limited to review of the sentence's legality." *State v. Allison*, 427 A.2d 471, 475 (Me.1981); *see State v. Palmer*, 468 A.2d 985, 987 (Me. 1983). Under 15 M.R.S.A. §§ 2141–2144 (1980), review of the "propriety" of a legal-

---

1. Defendant received a seven-year sentence for his conviction for gross sexual misconduct (Class A) and a concurrent eleven-month sentence for his conviction for sexual abuse of a minor (Class D). The two charges involved the same female victim and the same sexual act; the victim was 12 years of age at the time of the Class A offense, committed on or about August 6, 1980, and 14 at the time of the Class D offense, on or about July 29, 1982. Defendant was 39 on the latter date.

ly imposed sentence is committed to the Appellate Division of the Supreme Judicial Court. *See State v. Allison,* 427 A.2d at 475; *State v. Carver,* 330 A.2d 785, 786 (Me.1975); 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 40.1, at 347 (1967). Defendant attacks his sentence on the ground that the trial justice increased that sentence because he had exercised his constitutional right to stand trial. As such, his claim of error goes to the legality of the sentencing decision, not the propriety of the term of confinement actually imposed. *See State v. Plante,* 417 A.2d 991, 995 (Me.1980) (claim that sentencing justice took into account his finding that defendant had perjured himself at trial, in violation of defendant's constitutional right to due process, considered on direct appeal); *see also State v. Palmer,* 468 A.2d at 987 (challenge to sentence on constitutional grounds held cognizable on direct appeal). A second requirement for a challenge to a sentence to be cognizable on direct appeal is that the "alleged infirmity, even if one of law, must appear affirmatively from the record." *State v. Palmer,* 468 A.2d at 987 n. 6; *see State v. Blanchard,* 409 A.2d 229, 233 (Me. 1979); *State v. Parker,* 372 A.2d 570, 572 (Me.1977). In the case at bar the sentencing justice explicitly explained how and why defendant's decision to stand trial was used in the sentencing decision. If the justice's consideration of that factor did constitute error, it is error that appears "on the face of the appeal record so plainly that its existence is shown *as a matter of law." Id.* (emphasis in original); *see State v. Blanchard,* 409 A.2d at 233.

■ The motion for correction of sentence under M.R.Crim.P. 35 [2] was a proper procedural vehicle for raising defendant's claim of error in the Superior Court. As explicated above, defendant's claim of error addressed the legality of the sentence imposed. While M.R.Crim.P. 35 authorizes the sentencing justice to "revise a sentence prior to the commencement of execution thereof," it also authorizes the sentencing justice, within certain time limitations, to "correct an illegal sentence or a sentence imposed in an illegal manner." Defendant's motion properly fell within the scope of the latter language.

### III.

■ We turn now to the merits of defendant's contention that his seven-year prison sentence represented, in part at least, punishment meted out by the presiding justice because he had exercised his constitutional right to a trial. He bases his claim solely upon a certain remark by the justice at sentencing. After a careful examination of the entire sentencing transcript and of the full factual context in which the trial and sentencing took place, we are not convinced that any reversible error was committed. On the contrary, the justice had well in mind the appropriate factors to be considered and took into account defendant's going to trial only for the purpose—legitimate in face of defendant's plea for leniency—of testing the genuineness of defendant's claim at sentencing of personal reform and contrition.

At the jury trial held on October 27, 1983, the only witness was the young prosecutrix, who testified under direct examination by the State and then was subjected to aggressive [3] cross-examination by defendant's attorney. At sentencing five weeks later, the sentencing court had before it information that defendant after trial admitted the sexual offenses and claimed to be repentant. The court also received

---

2. M.R.Crim.P. 35 provides:

   The justice who imposed sentence may revise a sentence prior to the commencement of execution thereof and may correct an illegal sentence or a sentence imposed in an illegal manner within sixty days after the sentence is imposed, or within sixty days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal.

3. Appellant has not brought up a transcript of the trial, but he does not contest the accuracy of the paraphrase of that cross-examination given by the presiding justice at sentencing.

statements from defendant and his counsel, as well as from his sponsor in Alcoholics Anonymous, asserting that in the 15 months between the second sexual offense and the trial he had taken steps to combat his drug and alcohol problems and had successfully established himself in the business of selling cars. Defendant himself closed his plea for leniency with the following:

> I've worked hard this year to straighten my life out, put my business together, to be honest with people, be honest with myself. So far, it is working.

On the basis of defendant's claimed reform and repentance, the presiding justice was urged to show leniency in sentencing defendant for the Class A crime, which carries a term of imprisonment of up to 20 years. *See* 17–A M.R.S.A. §§ 253(4), 1252(2–A) (1983 & Supp. 1983–1984).

In announcing the seven-year sentence, the presiding justice addressed defendant as follows:

> Mr. Farnham, I hope that what you say is true, that you have found a way to deal with your substance problems and to deal with your personality problems. There are ... a lot of reasons why we sentence. They are all set out for us to see.
>
> One of them, and an important one, is rehabilitation; one of them is deterrence; one of them is pure and simple punishment; one of them is to give fair notice as to what crimes carry what results, and there are all kinds of factors that have to be taken into consideration. I would feel more confident in your expressions of change if you had admitted your guilt.
>
> *I have no quarrel with people and I do not punish people for having trials,* but for you to stand there and say how remorseful you feel and how sorry you are that it happened, after having put that little girl through the agony of cross-examination with discussion of her mental health—"Aren't you crazy, [name]? Weren't you pregnant, [name]?

> Didn't you have an abortion, [name]?" I have got to say that I do not think the remorse and the willingness to be honest has overcome your desire to avoid punishment as yet .... *[I]n evaluating your sincerity, I have to take into consideration what that little girl went through because of the trial,* and I am taking that into consideration.
>
> *I am also taking into consideration your rather lengthy, eleven-year-span criminal record.* The system has tried to help you. We have failed. To that extent, we share, I suppose, some responsibility for the fact that you have not been rehabilitated, but we do not share much. Opportunities have been given you for eleven years to do better, that kept going [*sic*] jail, probation, jail, probation; and we finally reach the point where, in fairness to others who come in accused of crimes and *in order* to actually say—*not to minimize the gravity of this offense and to fairly indicate to others who run through this string of behavior what can happen to them, there does need to be a lengthy prison sentence,* and I am going to impose a sentence of seven years at the Maine State Prison.

(Emphasis added)

The sentencing justice is accorded wide discretion in the sources and types of information that may be relied upon in determining the kind and extent of punishment to be imposed within the limits fixed by law. *See State v. Samson,* 388 A.2d 60, 67 (Me.1978). We cannot read the Justice's remarks to mean that the sentencing decision was based solely on defendant's election to go to trial. *See generally State v. Plante,* 417 A.2d at 995. *See also State v. Duncan,* 476 A.2d 191 (Me.1984) (memorandum of decision). On the contrary, those remarks show clearly that the justice was very conscious of the purposes for which punishment is imposed, as outlined in 17–A M.R.S.A. § 1151 (1983 & Supp.

1983–1984),[4] and also that the justice was applying to this defendant's circumstances many of the factors we suggested in *State v. Samson*, 388 A.2d at 67–68.[5] More specifically, the sentencing transcript demonstrates that the justice considered the gravity of the offense; its relation to the victim of the crime; defendant's background, including his drug and alcohol problems and his long record of criminal conduct; his remorse and repentance; his receptivity to rehabilitation; and the interest of the public in retribution and deterrence. *See id.* We therefore do not evaluate the sentencing justice's reference to defendant's trial demand in isolation. Rather, we must evaluate that reference in the context of all the other factors enumerated by the justice in drawing an individualistic picture of the person to be sentenced.

█ It is black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial. *See, e.g., Blackmon v. Wainwright*, 608 F.2d 183, 184 (5th Cir.1979), *cert. denied*, 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980);

*United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976); *Hess v. United States*, 496 F.2d 936, 938 (8th Cir. 1974); *Baker v. United States*, 412 F.2d 1069, 1073 (5th Cir.1969), *cert. denied*, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970). Defendant argues that the presiding justice's consideration in sentencing of his insistence on trial punished him for the exercise of that constitutional right. We disagree. Read as a whole, the sentencing transcript emphatically contradicts defendant's contention that he was punished for that reason; the justice properly considered that factor as relevant under the circumstances of this case to the full assessment of defendant's post-trial expressions of contrition and remorse and his prospects for rehabilitation.

█ A criminal defendant's repentance and remorse and his prospects for rehabilitation are factors that we have explicitly approved as appropriate for consideration in sentencing. *See State v. Samson*, 388 A.2d at 68. Courts have widely recognized the relationship between a defendant's will-

---

**4.** 17–A M.R.S.A. § 1151 provides:

The general purposes of the provisions of this part are:

1. To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;

2. To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served[;]

3. To minimize correctional experiences which serve to promote further criminality;

4. To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

5. To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

6. To encourage differentiation among offenders with a view to a just individualization of sentences;

7. To promote the development of correctional programs which elicit the cooperation of convicted persons; and

8. To permit sentences which do not diminish the gravity of offenses, with reference

to the factor, among others, of the age of the victim.

**5.** In *State v. Samson*, 388 A.2d 60, 67–68 (Me. 1978), we said:

It is generally recognized that a trial court in imposing sentence should take into consideration the following factors: the gravity of the offense, its relation to the victim of the crime, if any, and the defendant's degree of culpability therein; the defendant's background, including his past record of criminal offenses and any history of undesirable behavior pattern; the defendant's personal characteristics, such as his personality, character and social traits, his age, educational background and employment record, his remorse, repentance and cooperativeness; the defendant's subjectivity to rehabilitation; the interest of the public in retribution and deterrence, and its right to protection against crime. There undoubtedly might be other factors germane to the task facing the sentencing court in assessing a just sentence, which at the same time should be the judgment of the judge and an adjudication tailored to the individual characteristics and deserts of the particular defendant, viewed in the light of the public interest in law and order.

ingness to admit responsibility for his acts and the likelihood of his rehabilitation.

It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault. ... [T]o the extent that rehabilitation is the objective, no fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.

*United States v. Floyd,* 496 F.2d 982, 989 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974) (quoting *Gollaher v. United States,* 419 F.2d 520, 530 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969)); *see also United States v. Derrick,* 519 F.2d 1, 4 (6th Cir.1975). Thus, defendant and others on his behalf were perfectly justified in seeking leniency on the basis of his claimed repentance and remorse; but at the same time the sentencing justice could fully evaluate the sincerity of those claims only by considering defendant's whole course of conduct. In the instant case the sentencing justice expressly disclaimed any purpose of punishing defendant for going to trial.[6] Defendant's insistence upon trial was properly relevant to the court's conclusion that

I do not think the remorse and the willingness to be honest has overcome your desire to avoid punishment as yet.

The justice used the trial demand for only that limited purpose.

It cannot be gainsaid that defendant's criminal conduct, involving as it did the sexual abuse of a young girl, imposed substantial suffering on another. The certain consequence of his insistence on trial was that her suffering would be exacerbated in a public forum with the young prosecutrix, as inevitably the only witness, recounting defendant's violation of her person on direct examination and defense counsel attacking her credibility on cross-examination. Although defendant had an absolute right to a trial and to conduct vigorous cross-examination in connection with a crime for which he soon after admitted his guilt, he cannot escape the fact that his exercise of those rights are probative of his attitude towards the victim and society. His conduct tends to contradict his claim to have changed his ways for the better in the 15 months between the second offense and the time of the trial. In all the circumstances present here, it was not improper for the presiding justice to consider all of defendant's conduct in testing defendant's claims, put forth at sentencing, of contrition and reformed character.

█ The sentencing justice's use of defendant's decision to stand trial was wholly consistent with the American Bar Association's *Standards for Criminal Justice* (2d ed.1980). Standard 14–1.8 provides in part:

(a) ... It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant, and when there is substantial evidence to establish that:

(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;

· · · · ·

(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them ....[7]

---

**6.** Thus, from the outset, the case at bar is distinguishable from cases such as *Scott v. United States,* 419 F.2d 264, 269 (D.C.Cir.1969), where the trial judge said, "If you had pleaded guilty to this offense, I might have been more lenient with you." As the court of appeals said, "[t]he

stark import of this comment is that the defendant paid a price for demanding trial."

**7.** The Commentary to subparagraph (a)(iii) notes:

This standard is most likely to apply in cases such as rape or indecent liberties, where the

*Id.* at 14–40. The language of that standard plainly recognizes that a relationship may exist between a defendant's decision to forego trial and his contrition and consideration for his victim. We read the sentencing justice's remarks in the instant case as stating nothing more than the proposition that where the defendant puts the State to its proof in a full trial he will encounter greater difficulty in attempting to persuade the court that he is entitled to special leniency on the basis of those factors.[8] *See United States v. Jansen,* 475 F.2d 312, 319 (7th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973) (policy of leniency following guilty plea properly held by the trial court to be inapplicable to situation where defendant puts government to its proof in full trial); *United States v. Lehman,* 468 F.2d 93, 109–10 (7th Cir.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232 (1972) (where defendant attempts through trial tactics to convince the jury that another had committed the offense, leniency accorded guilty plea properly withheld); *cf. United States v. Underwood,* 588 F.2d 1073, 1078 (5th Cir.1979) (sentencing judge may impose more severe sentence following trial than he would have imposed following guilty plea on basis of volume and persuasiveness of evidence of guilt presented at trial).

There is a clear-cut distinction between enhancing a sentence because the convicted defendant insisted on a trial and considering that fact along with others in assessing how real is defendant's claim of remorse and reform at the time of sentencing. *Cf. United States v. Miller,* 589 F.2d 1117, 1138 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979) ("We perceive a distinction ... between punishing a defendant for maintaining his innocence and preserving his right to appeal ... and merely considering a defendant's failure to recant when evaluating his prospects of rehabilitation without incarceration"). We find no error in the Superior Court's consideration of the implications of defendant's trial demand in evaluating his "whole person and personality." *State v. Plante,* 417 A.2d at 995 (quoting *United States v. Grayson,* 438 U.S. 41, 53, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978)).

The entry is:

Judgments of conviction affirmed.

NICHOLS, WATHEN, and SCOLNIK, JJ., concurring.

GLASSMAN, Justice, concurring in part and dissenting in part.

I concur with part II of the majority's opinion.

In part III of its opinion, the majority holds that when imposing sentence, the trial court may consider, as evidence of an absence of remorse, an accused's decision to stand trial and put the state to its proof rather than to plead guilty. Because the stark and unmistakable import of this holding is that the accused is penalized for exercising his constitutional right to a trial, I respectfully dissent.

Although generally remorse is an appropriate factor for consideration in sentencing, constitutional difficulties arise when a sentencing authority concludes from an accused's choice to exercise his fifth, sixth, and fourteenth amendment rights that the individual lacks remorse for the misdeed committed, and considers this factor in sen-

---

victim would have to appear in court and repeat the details of what transpired. Testifying in public in these kinds of cases is not only humiliating but may be a severely traumatic experience for the victim.

ABA *Standards For Criminal Justice* Standard 14–1.8(a)(iii) commentary at 14–48 (2d ed. 1980).

**8.** The fact that a defendant who elects to stand trial may have a more difficult task of showing entitlement to special leniency does not demonstrate that his sentence is

in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove guilt at trial.

ABA *Standards, supra* note 7, Standard 14–1.8(b), at 14–40.

tencing. In *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966), for example, the sentencing judge considered as a factor in sentencing the accused's failure "to come clean and confess his crime" prior to imposition of punishment. Deeming impermissible the conditioning of sentence upon the sacrifice of a constitutional right,[1] the *Thomas* court held the defendant was improperly penalized for exercising his right to a trial and to avoid compulsory self-incrimination. *Id.* at 945–47; *see also United States v. Laca*, 499 F.2d 922, 927 (5th Cir.1974). *But cf. United States v. Allen*, 596 F.2d 227, 231 (7th Cir.1979), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979).

The *Thomas* decision properly recognized the constitutional infirmity which results when negative character traits are assigned to an individual convicted of crime merely because that individual has chosen to stand trial, and such traits are considered when sentence is imposed. Both the United States and Maine Constitutions guarantee the accused individual the unfettered right to a public trial at which the state must prove guilt beyond a reasonable doubt, and the unfettered right not to be compelled to be a witness against oneself. *See* U.S. Const. amends. V & VI; Me. Const. art. I, § 6. By considering the decision to put the state to its proof rather than to plead guilty as reflective of a lack of remorse, the sentencing authority is, in fact, exacting a price for the exercise of that choice, and therefore, punishing the individual for choosing to go to trial. To punish a person for exercising a basic constitutional right is a due process violation. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Moreover, a judicially imposed penalty which needlessly discourages the exercise of the rights not to plead guilty and to demand a trial must be viewed as unconstitutional.[2] *See United States v. Jackson*, 390 U.S. 570, 582, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968).

I have no doubt that the result the majority reaches will impermissibly chill the exercise of the right to a trial. The majority opinion sends a loud and clear message to those accused of crime in Maine: your refusal to sacrifice your constitutional right not to plead guilty will be considered a negative factor in an evaluation of your capability of rehabilitation, and you will be sentenced accordingly.[3]

The majority characterizes the sentencing justice's comments as reflecting only the court's disinclination to believe the defendant's claim of remorse. Even assuming this characterization to be correct, the fact remains that the defendant, merely because of his choice to stand trial, quite possibly was sentenced more harshly than he would otherwise have been. Any doubt as to whether the defendant was punished for exercising his right to trial must be

1. Were the defendant to confess to the crime of which he was convicted, the court noted, he would jeopardize his chances of successfully pursuing appellate and post-conviction remedies, and would be admitting to the commission of perjury at his trial. *Thomas v. United States*, 368 F.2d at 945.

2. Although there might be limited instances in which the state interest is so compelling as to justify such chilling effect, *see, e.g., Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963) (first amendment area), no such interest is asserted or can be envisioned here.

3. The fifth and fourteenth amendments of the United States Constitution, as well as article I, § 6 of our state constitution, secure "the right of

a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); *see also State v. Libby*, 410 A.2d 562 (Me.1980). The term "penalty" is not restricted to the fine or punishment context, but includes the imposition of any sanction making assertion of the privilege costly. *See Griffin v. California*, 380 U.S. 609, 614–15, 85 S.Ct. 1229, 1232–1233, 14 L.Ed.2d 106 (1965); *see also United States v. Jackson*, 390 U.S. at 582, 88 S.Ct. at 1216 (statute assuring no death penalty for those who plead guilty unconstitutional for inevitable effect of such statute is to discourage assertion of rights under fifth and sixth amendments).

resolved in favor of the defendant.[4] *See Johnson v. State*, 274 Md. 536, 543, 336 A.2d 113, 117 (1975); *State v. Nichols*, 247 N.W.2d 249, 256 (Iowa 1976).

In analogous cases, other courts have expressed a similar concern for protecting the freedom of the choice to stand trial. In *State v. Hass*, 268 N.W.2d 456 (N.D.1978), the North Dakota Supreme Court vacated a sentence because the sentencing justice took into account the defendant's failure to "take the first step to rehabilitation, which generally includes making a complete admission of his implicity [sic] in the offense and throwing himself on the mercy of the Court." *Id.* at 463. The *Hass* court then reaffirmed the principle:

> A person charged with a crime has the absolute right to require the State to prove the charges against him, and his sentence may not be different if he chooses one course from that if he chooses the other. As was said more than four centuries ago:
>
> "A man may plead not guilty and yet tell no lie, for by the law, no man is bound to accuse himself. So when I say, not guilty, the meaning is as if I should say by way of paraphrase, I am not so guilty as to tell you, if you will bring me to trial and have me punished for this you lay to my charge; prove it against me." John Selden, "Table Talk,": published by the Selden Society, London, 1927. [Spelling and punctuation modernized.]

*State v. Hass*, 268 N.W.2d at 964. In *State v. Nichols*, 247 N.W.2d 249, the Iowa Supreme Court vacated a sentence based in part on a similar impermissible ground. The *Nichols* court declared:

> [T]he fact a defendant has exercised the fundamental and constitutional right of requiring the state to prove at trial his guilt as charged and his right as an accused to raise defenses thereto is to be

given no weight by the trial court in determining the sentence to be imposed after the defendant's guilt has been established.

*Id.* at 255; *see also Johnson v. State*, 274 Md. 536, 336 A.2d 113. These cases demonstrate that the proper inquiry in the instant case is not whether the decision to stand trial is indicative of a lack of remorse, but whether the defendant was in any way penalized for that choice. The trial justice's equation of the defendant's choice to stand trial with a lack of remorse must be viewed as imposing such penalty.

Furthermore, I cannot subscribe to the logical underpinning of the majority opinion, namely, the decision to plead not guilty and to cross-examine vigorously the witness against you is in any manner probative of a malevolent attitude toward the victim and society. As eloquently stated in *Scott v. United States*, 419 F.2d 264 (D.C. Cir.1969), in a somewhat different context:

> [T]he peculiar pressures placed upon a defendant threatened with jail and the stigma of conviction make his willingness to deny the crime an unpromising test of his prospects for rehabilitation if guilty. It is indeed unlikely that many men who commit serious offenses would balk on principle from lying in their own defense. The guilty man may quite sincerely repent his crime but yet, driven by the urge to remain free, may protest his innocence in a court of law. This realization, indeed, unquestionably accounts for the extreme infrequency with which convicted criminals are in fact prosecuted for perjury committed at their trials.
>
> . . . .
>
> Repentance has a role in penology. But the premise of our criminal jurisprudence has always been that the time for repentance comes after trial. The adversary process is a *fact-finding engine*, not

---

**4.** The majority assigns significance to the fact that the sentencing justice did not base the sentence *"solely"* on the defendant's election to go to trial. *See ante* at 890–891 (emphasis added). I find this consideration irrelevant. An impermissible factor crept in to the sentencing decision. The quantitative role the impermissible factor played in such decision does not detract from the nature of the constitutional violation.

a drama of contrition in which a pre-judged defendant is expected to knit up his lacerated bonds to society.

There is a tension between the right of the accused to assert his innocence and the interest of society in his repentance. But we could consider resolving this conflict in favor of the latter interest only if the trial offered an unparalleled opportunity to test the repentance of the accused. It does not. There is other, and better, evidence of such repentance. The sort of information collected in presentence reports provides a far more finely brushed portrait of the man than do a few hours or days at trial. And the offender while on probation or in prison after trial can demonstrate his insight into his problems far better than at trial.

If the defendant were unaware that a proper display of remorse might affect his sentence, his willingness to admit the crime might offer the sentencing judge some guidance. But with the inducement of a lighter sentence dangled before him, the sincerity of any cries of *mea culpa* becomes questionable. Moreover, the refusal of a defendant to plead guilty is not necessarily indicative of a lack of repentance. A man may regret his crime but wish desperately to avoid the stigma of a criminal conviction.

*Id.* at 269–71; *see also* Comment, *The Influence of the Defendant's Plea on Judi-cial Determination of Sentence,* 66 Yale L.J. 204, 210 (1956) [hereinafter cited as *Influence of Defendant's Plea*] (value of guilty plea as gauge of character impaired when defendant realizes such plea may mitigate punishment).

The majority, by employing the fiction that the sentencing justice did not punish Robert Farnham for going to trial, but assigned to Farnham a character trait properly considered in sentencing, indulges in an unfortunate and dangerous elevation of form over substance. Through a game of "semantic gymnastics," the majority never answers the critical inquiry in the case before us: was Robert Farnham penalized for asserting his rights under both the United States and Maine Constitutions? Because I believe the answer is yes, and to prevent a situation in the future in which individuals accused of crimes in Maine would be judicially coerced to forego their constitutional rights, I would remand for resentencing. The minimal value of a guilty plea in demonstrating remorse does not justify the burden the majority has placed on the constitutional right to a trial.[5] *See United States v. Grayson,* 438 U.S. 41, 58, 98 S.Ct. 2610, 2619, 57 L.Ed.2d 582 (1978) (Stewart, J., dissenting).

---

5. The majority's reliance on the American Bar Association's *Standards for Criminal Justice* standard 14–1.8 (2d ed. 1980) [hereinafter cited as *Standards*] is misplaced. The standard the majority cites goes no further than to recognize that a court may grant sentencing concessions to an individual who has shown potential for rehabilitation by entering a guilty plea, *if, and only if,* the court is convinced that such plea is motivated by genuine feelings of contriteness or by consideration for the victim or victims. The proposition that a court may look disfavorably upon an assertion of remorse merely because the defendant has chosen to stand trial neither necessarily nor logically follows. The above cited standard does not stand for the general proposition that a guilty plea is indicative of feelings of remorse, and a not guilty plea is not. The commentary to standard 14–1.8(a) amply demonstrates this point:

A reduction in sentence following a guilty plea is consistent with the rehabilitation theory of criminal punishment only if such a plea is indicative of remorse for prior criminal acts. Although a guilty plea may at times be motivated by repentance, more often it would seem to represent exploitation by the accused of the prosecutor's and the court's reaction to such a plea. If a defendant who acknowledged his guilt were aware that the plea could not influence the extent of punishment, then perhaps his action might reflect a renunciation of criminal propensities. But the very fact that a defendant realizes a guilty plea may mitigate punishment impairs the value of the plea as a gauge of character.

*Standards, supra,* commentary to standard 14–1.8(a)(i), at 14.46 (quoting *Influence of Defendant's Plea, supra,* at 210).