STATE of Maine

v.

Lawrence DANSINGER, et al.

Supreme Judicial Court of Maine.

Argued Sept. 5, 1986.

Decided Feb. 25, 1987.

---

R. Christopher Almy, Dist. Atty., Gregory Campbell (orally), Asst. Dist. Atty., Bangor, for plaintiff.

James R. Crotteau (orally), Orono, for defendant.

Before NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Defendants, Lawrence Dansinger, Karen Harlan, Marguerite Roosen, David Demere, Peter Millard, Mary Lois Anderson and Francine Falcone, appeal judgments of the Superior Court in Penobscot County, finding them guilty of criminal trespass, 17–A M.R.S.A. § 402 (1983). The Defendants contend that the Superior Court committed reversible error in (1) suggesting that the State move for an order in limine to exclude certain evidence the Defendants wished to adduce at the jury trial; (2) ruling on the motion in a manner erroneous as a matter of law; (3) instructing the jury in a manner that was erroneous and incomplete; and (4) imposing sentences that were improper because the sentencing justice stated that these sentences were based in part on the fact that the Defendants claimed their constitutional right to a jury trial.

We reject the Defendants' assertions of error pertaining both to the motion in limine and to the jury instructions and affirm the judgment of conviction by the Superior Court. However, we cannot affirm the sentences imposed. We must vacate the sentences and remand for re-sentencing.

On August 5, 1984, the Defendants were arrested for criminal trespass upon Maine Air National Guard property at the Bangor International Airport in violation of 17–A M.R.S.A. § 402 (1983), a Class E crime.[1]

---

**1.** 17–A M.R.S.A. § 402 Criminal Trespass, states in pertinent part:

    1. A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so:

      .    .    .    .    .

    *B.* He enters any structure that is locked or barred;

    *C.* He enters any place from which he may lawfully be excluded and which is posted in a manner prescribed by law or in a manner reasonably likely to come to the attention of

The Defendants had been taking part in a peace demonstration at the Bangor International Airport to protest the nuclear arms race as members of the "Bangor Peace Initiative." The Defendants were arraigned the following day in District Court (Bangor) and each pleaded not guilty to the charges. Upon a motion by the State the District Court consolidated the cases of these Defendants for trial.

At the call of the docket on November 8, 1984, the Superior Court suggested to the prosecutor that the State serve and file a motion in limine in order to review certain evidence the court anticipated the Defendants would seek to present at trial. At hearing on the motion in limine, the Defendants expressed their desire to offer evidence at trial they believed would morally and legally justify their actions. Their defense to the criminal trespass was based on (a) the "competing harms" statute, 17–A M.R.S.A. § 103 (1983), and (b) principles of international law. At the hearing on the motion in limine the Superior Court deemed much of the evidence that the Defendants wished to present on the "competing harms" justification to be inadmissible at trial as irrelevant to the issues presented. A later pretrial motion to overrule the order was made by the Defendants and denied by the court.

A jury trial was had on January 23 and 24, 1985. Each of the Defendants was found guilty of criminal trespass and each was fined $250.00.

■ The major contention of the Defendants concerns the motion in limine. The motion in limine is an effective procedural device that allows a trial court to rule upon the admissibility of potentially prejudicial or disruptive evidence in advance of trial. Its use is expressly authorized by Rule 12(c) of the Maine Rules of Criminal Procedure. *See generally Gendron v. Pawtucket Mutual Insurance Company*, 409 A.2d 656, 659 (Me.1979). The Defendants raise issues on appeal pertaining to the potential abuses of the motion in limine. However, the fundamental point is that there is no abuse of discretion unless the motion was used to exclude relevant, admissible evidence. Therefore, our inquiry focuses upon the nature of the evidence sought to be adduced.

In this case the motion in limine challenged evidence that the Defendants sought to proffer concerning their defense based upon the "competing harms" statute, 17–A M.R.S.A. § 103(1)[2] and upon principles of international law.

The Defendants contend that the "competing harms" justification is available to them because their actions of intentionally committing a criminal trespass were necessary to avoid imminent physical harm to themselves and others. They urge that the aircraft stationed at the Maine Air National Guard base have the capacity to refuel aircraft carrying nuclear arms, that are an integral part of the United States nuclear arms force. This force and the nuclear arms build-up constitute a set of conditions that the Defendants argue presents the imminent physical harm contemplated by the statute.

■ The Defendants' argument is misguided for several reasons. First, the plain language of the statute itself, together with the comment of the Criminal Law Revision Commission, make clear that the

intruders or which is fenced or otherwise enclosed in a manner designed to exclude intruders;

 D.   He remains in any place in defiance of a lawful order to leave, which was personally communicated to him by the owner or other authorized person, ....

 .     .     .     .     .

 2.   Violation of subsection 1, paragraph B, C, D ... is a Class E crime.

**2.**  17–A M.R.S.A. § 103(1) "Competing harms" states:

1.   Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such statute.

statute is not available to the Defendants. That comment clearly states,

> The second sentence of the first subsection is designed to prevent this section from being a basis for justifying acts of civil disobedience.

Second, and most importantly, the "competing harms" justification is inapplicable because the threat cited is not of the imminence required by the statute. The Defendants argue nuclear war is "imminent" because it is possible that it may occur at anytime. However, this is an improper construction of the statutory term. Statutes are to be given their ordinary meaning from a reading of the language that the Legislature used. *State v. Vainio*, 466 A.2d 471, 474 (Me.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). The ordinary meaning for "imminent" is, "appearing as if about to happen; likely to happen without delay; impending...." *Webster's Unabridged Dictionary 2d*, 1979, p. 909.

Further, in a case where we were previously called upon to interpret this same statute we declared that it is not enough that the individual subjectively believes that an imminent threat of physical harm exists, but "... it is further requisite that it be shown *as a fact* that such physical harm is imminently threatened." *State v. Kee*, 398 A.2d 384, 386 (Me.1979) (emphasis added). In jurisdictions with a "competing harms" statute similar to our own the courts have overwhelmingly rejected the defense in similar circumstances owing to the inability of defendants seeking to invoke this defense for their nuclear protests to prove the "imminent" nature of the threat. *United States v. Best*, 476 F.Supp. 34 (D.Colo.1979); *State v. Marley*, 54 Hawaii 450, 509 P.2d 1095 (1973); *Commonwealth v. Hood*, 389 Mass. 581, 452 N.E.2d 188 (1983); *Commonwealth v. Brugmann*, 13 Mass.App.Ct. 373, 433 N.E.2d 457

(1982); *State v. Warshow*, 138 Vt. 22, 410 A.2d 1000 (1979).

Finally, this statute is inapplicable because it envisions a situation where a defendant's acts are justifiable because those acts work directly to lessen the threat posed by the opposing harm. In the case before us there is no reason to believe that the Defendants' acts would lessen the threat of harm of nuclear war. Moreover, the Defendants offered no proof of such a proposition. *See Commonwealth v. Averill*, 12 Mass.App.Ct. 260, 261–62, 423 N.E.2d 6, 7, (1981), where the court stated,

> An essential element of the justification defense, e.g., duress ... is that the actor reasonably anticipated a *direct causal relationship* between his act and the avoidance of harm .... For this reason the defense of necessity generally arises in *emergency* situations, when the threatened disaster is immediate.

(emphasis added). *See also Commonwealth v. Hood*, 452 N.E.2d at 196; LaFave & Scott, *Criminal Law* § 50 at 387–88 (1972).

■ At trial the Defendants sought to present evidence of the alleged illegality of nuclear weaponry and the preparation for nuclear war under principles of international law as expressed in treaties, international conventions and the United Nations Charter. Validly ratified treaties do indeed become the supreme law of the land. U.S. Const. art. VI, cl. 2; *Missouri v. Holland*, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920); *The Paquete Habana*, 175 U.S. 677, 20 S.Ct. 290, 44 L.Ed. 320 (1900). From this proposition the Defendants leap to the conclusion that their efforts to interfere with this country's nuclear capability at the Maine Air National Guard Base are justified under section 102(1) of 17–A M.R.S.A. (1983)[3] because they were making an effort to protest and prevent the allegedly illegal governmental action. However,

---

3. 17–A M.R.S.A. § 102(1) provides:

Any conduct, other than the use of physical force under circumstances specifically dealt with in other sections of this chapter, is justifiable when it is authorized by law, including laws defining functions of public servants or

the assistance to be rendered public servants in the performance of their duties; laws governing the execution of legal process or of military duty; and the judgments or orders of courts or other public tribunals.

their application of the principles of international law is in error.

While it is true that international treaties become the supreme law of the land, it is equally true that, "... it is a part of our law for the application of its own principles, and these are concerned with international rights and duties and not with domestic rights and duties." *Skiriotes v. Florida,* 313 U.S. 69, 73, 61 S.Ct. 924, 926, 85 L.Ed. 1193 (1940). Particularly with criminal offenses violations of international law do not occur when the defendants are nationals of the acting state. *Wilson v. Girard,* 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed. 1544 (1957); *see also Banco National de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Dreyfus v. Von Finck,* 534 F.2d 24, 31 (2d Cir.1976), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976).

In sum, neither the defense of "competing harms" nor principles of international law are available to these Defendants. The Superior Court committed no error by entertaining and granting a motion in limine to exclude evidence relevant to such a defense. *State v. Kee,* 398 A.2d at 386.

■ The Defendants contend that the Superior Court committed several reversible errors concerning the jury instructions. The Defendants, however, did not object to these before the jury retired to consider its verdict, as required by M.R.Crim.P. 30(b). Therefore, the jury instructions are reviewed on appeal only for obvious error affecting substantial rights. M.R.Crim.P. 52(b); *State v. Winchenbach,* 501 A.2d 1282, 1286 (Me.1985).

■ First, the Defendants assert that the instruction on 17–A M.R.S.A. § 402(1)[4] "Criminal Trespass" was inaccurate. They argue that the court instructed the jury that a license or privilege to trespass onto the property can only legally come from the owner, when in fact such a license or privilege can come from any legally valid authority, such as the "competing harms" statute.[5]

This assertion of error is without merit for several reasons. First, it is only arguable that the trial justice's instructions were misleading. At the first mention of "license or privilege" the justice's words did imply that such license or privilege must come from the owner. However, in summarizing the jury instructions the justice omitted any reference to the owner, and so clarified the point. There was no error because the correctness of the charge must be determined by reading it in its entirety, not by extracting certain isolated instructions. *State v. Ryder,* 348 A.2d 1, 5 (Me. 1975).

Also, it is important to note that the issue of license or privilege necessarily involves the state of mind of the Defendants, and would provide them with an excuse only if they believed they were licensed or privileged to trespass onto the property. However, they clearly did not have such a belief, as is evidenced by their own words. One week before the protest two of the Defendants, David Demere and Mary Lois Anderson, went to the Bangor Police Station and told Captain Stockford and Chief Woodhead that they and other members of the "Bangor Peace Initiative" intended to commit a "criminal trespass" upon the National Guard property. Also, Defendants Karen Harlan and Peter Millard admitted at trial that they knew they were not "authorized" to enter onto the property.[6] Therefore, the jury instruction as given does not constitute an obvious error that affected substantial rights of the Defendants.

The last contention of the Defendants that merits discussion concerns the sentences imposed by the Superior Court and

---

4. *See* footnote 1 for the text of the statute.

5. *State v. Thibeault,* 402 A.2d 445, 448–49 (Me. 1979) implies that a valid license or privilege can come from anyone in lawful possession, or authorized to give such permission to enter.

6. These facts also lead us to reject the Defendants defense based on 17–A M.R.S.A. § 36 "Ignorance or mistake." That section is not applicable to these Defendants who clearly indicated that before and at the time of their arrest they believed they were not authorized to enter onto the property.

the statements of the court relative thereto. The Defendants claim the court committed error by imposing a more severe penalty upon them because they chose to exercise their right to a trial by jury. After stating that the offense did not call for any kind of incarceration, the court stated a fine was in order to attempt to recoup the cost to the court of the jury trial.[7] Our appellate role, however, is limited to a review of the sentence's legality. *State v. Palmer*, 468 A.2d 985 (Me.1983). To consider its legality we must consider the constitutional and statutory limitations imposed on a trial judge when sentencing.

■ Clearly, the Defendants are correct in their assertion that it is a violation of due process of law to punish an individual for the exercise of his constitutional right to a trial. *State v. Farnham*, 479 A.2d 887, 891 (Me.1984); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The statute that the Defendants violated provides that the offense is a Class E crime[8] that authorizes imprisonment of up to 6 months and a fine of up to five hundred dollars ($500.00).[9]

There are eight possible purposes that can be satisfied through the imposition of a criminal penalty.[10]

■ In this case the Superior Court enumerated none of the purposes of punishment that were considered by it in imposing these fines. In fact, the only statements made by the court at the time of sentencing were constitutionally impermissible as the basis for rendering a sentence. *State v. Sutherburg*, 402 A.2d 1294, 1296 (Me.1979).

We conclude, then, that these sentences were an unconstitutional punishment of the Defendants' legal exercise of their right to a trial by jury.

The entry is:

Judgments of conviction affirmed.

Judgment of sentences vacated.

Remanded for sentencing consistent with the opinion herein.

GLASSMAN and SCOLNIK, JJ., concurring.

WATHEN, Justice, dissenting

I must respectfully dissent from that part of the opinion of the Court dealing

---

**7.** The Superior Court stated to the Defendants:
It is however, as Mr. Almy points out—your exercise of your—well, it isn't even a right to protest. Your violation of the law has been an attempt to secure a forum from which you could express an opinion ... you have cost the taxpayers quite a bit of money in your choice of forum ... I am referring also to the expense of this forum, 12, 13 jurors. A fine is in my opinion clearly in order and somewhat reflective of—although not—won't pay for the entire cost ... The fact is that you have chosen to violate the law to make a statement, and I personally and as a judge feel that, if a violation of the law is going to be used to make a statement, then perhaps we can be expected to attempt to recoup at least the costs to us of your choice of vehicles to speak.

**8.** 17-A M.R.S.A. § 402(2) (1983).

**9.** 17-A M.R.S.A. § 1301(1)(C) (1983); 17-A M.R.S.A. § 1252 (1983 & Supp.1986).

**10.** 17-A M.R.S.A. § 1151 (1-8) (1976 & Supp. 1985), which states:
§ 1151 Purposes
The general purposes of the provisions of this part are:

1. To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;
2. To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served;
3. To minimize correctional experiences which serve to promote further criminality;
4. To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;
5. To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;
6. To encourage differentiation among offenders with a view to just individualization of senences;
7. To promote the development of correctional programs which elicit the cooperation of convicted persons; and
8. To permit sentences which do not diminish the gravity of offenses, with reference to the factor, among others, of the age of the victim.
*See also, State v. Samson*, 388 A.2d 60, 67–68 (Me.1978).

with the illegality of the sentences imposed. I do not find that the statement of the sentencing justice in this case demonstrates a jurisdictional infirmity as a matter of law and thus, I would not take cognizance of the claim on direct appeal.

Initially, it should be noted that the sentence in each case consisted of a fine of $250. Criminal trespass is a Class E crime and the laws of Maine authorize a sentence of imprisonment for a period not in excess of 6 months (17–A M.R.S.A. § 1252(2)(E)), and a fine not in excess of $500 (17–A M.R.S.A. § 1301(1)(C)). Although consideration of the relative severity of the sentence is not controlling, it is clear that, on their face, the sentences in this case, fit comfortably within the lower scale of the authorized range of gravity.

The general principle that underlies our analysis of claims of sentence illegality has been clearly stated as follows:

> This principle is that even though illegality in a sentence may qualify for review in a direct appeal, as a 'jurisdictional' infirmity, yet, because the review in a direct appeal is confined strictly to the record brought before the court, the claimed illegality of a sentence can be given ultimate cognizance on direct appeal only where the alleged sentencing infirmity appears so plainly on the face of the record that there can be no rational disagreement as to its existence.

*State v. Blanchard,* 409 A.2d 229, 233 (Me. 1979).

In the present case the Court appears to have reversed the usual method of analysis. The sentences are found to be unconstitutional, not because the record demonstrates the existence of an infirmity beyond any possibility of rational disagreement, but rather, because the Court is uncertain as to what valid considerations led to the sentences imposed. I submit that such a defect is not cognizable on direct appeal.

A comparison of the sentencing record in this case with the record involved in *State v. Sutherburg,* 402 A.2d 1294 (Me.1979) reveals the error in this Court's analysis. In *Sutherburg* the defendant had first been convicted in the District Court of O.U.I. and fined $150. Following a trial *de novo* before a jury in the Superior Court, defendant was once again convicted and fined $750. The sentencing justice explicitly stated that defendant was without justification for trying the case. After calculating the cost of providing a jury the court stated:

> And I am going to fine him $750. I am compromising on the full cost of the jury, but I feel that he should pay $750 as some reimbursement to the State for the expense it has been put to in this case.

*Id.* at 1296. On those facts we had no difficulty in concluding from the record that "the comments of the trial justice clearly reveal that the defendant was being penalized for exercising his right to trial by jury." *Id.* In *Sutherburg,* there could be no rational disagreement as to the existence of the infirmity in the sentence and in fact the State conceded that the sentence was unconstitutional. *Id.* In the present case it is not at all clear from the record that the defendants were penalized for exercising their right to trial by jury. The record admits of rational disagreement as to whether defendants were appropriately penalized for committing a crime involving expense to the City of Bangor or were unjustly penalized for demanding a trial by jury. Direct review of the alleged infirmity should be precluded by the fact that the infirmity does not appear plainly and affirmatively on the record. I would affirm the entire judgment.