**STATE of Iowa, Appellee,**

v.

**Roger C. NICHOLS, Appellant.**

**No. 58966.**

Supreme Court of Iowa.

Nov. 17, 1976.

Mark Belz, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle, IV, Asst. Atty. Gen., David W. Newell, County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

Roger Clarence Nichols appeals from judgment entered following his conviction by a jury of the crime of breaking and entering with intent to commit larceny in violation of section 708.8, The Code. Defendant was sentenced to the Men's Reformatory at Anamosa for a period not to exceed ten years, with credit for time served pending trial.

The factual circumstances giving rise to the charge occurred the early morning hours of August 29, 1975, when defendant was apprehended by Muscatine police inside Cook's Music Shop, a Muscatine business establishment. A county attorney's information charging defendant with the crime referred to above was filed September 11.

As a witness defendant admitted entering the building through an allegedly unlocked door. Thus, the only issue for the jury's consideration was defendant's intent at the time of the breaking and entering.

Defendant testified that shortly before his arrest he had been driving through the downtown area of Muscatine and noticed a man standing in the doorway of the Beneficial Finance office. Defendant became suspicious of the man's activities and concerned "because my father—he cleans there; and its my father's responsibility, just as much as it would be the manager of Beneficial." Defendant's concern prompted him to investigate and ultimately to enter the allegedly unlocked door. Once inside defendant looked around to see if anything had been tampered with and in so doing activated a burglar alarm in the Muscatine police station by opening a door leading from the Beneficial Finance office into Cook's Music Shop. Defendant's explanation of his presence in the building in question was obviously not accepted by the jury.

In light of defendant's assignments of error the only facts relevant to this appeal concern statements made by the trial court at defendant's sentencing. Defendant's contentions on appeal are based upon the emphasized portion of the following remarks of the trial court:

"THE COURT: Well, quite frankly, Mr. Nichols, *but for the story which the jury must have believed was concocted, therefore perjurous,* to-wit: That you went into this building in the interest of protecting your father, who was the—had the janitorial service contract there, and so forth, *and the rather glib way that you told that on the witness stand, I might be willing to go along with these recommendations.* In other words, I think I'm saying to you, *had you said 'Okay. I have done this, and I'm willing now to face the consequences of my acts,' you might then be able to persuade the court that sufficient turn-around had occurred, that you should be afforded another chance.* However, under the record here, I just don't believe that I can do that. You're 27 years of age. * * * [K]eeping a job for a few weeks, I would hope that that is—it indicates a complete turn-around; but I'm in no way certain that it is. And in view of the story that you told at the trial, I don't feel disposed to go along with that. * * *."

Defendant's appeal presents the following questions for this court's review:

(1) Did the statement of the trial court that it might have been more lenient had defendant admitted committing the crime

charged demonstrate defendant was penalized for demanding his constitutional right to a trial and for exercising his constitutional right not to testify against himself?

(2) Did the statement of the trial court that it might have been more lenient had defendant not, in the opinion of the trial court, perjured himself demonstrate defendant was penalized for demanding his constitutional right to a trial?

(3) If it is determined resentencing of defendant is mandated by this record is defendant entitled to be sentenced by a different judge?

I. Defendant directs this court's attention primarily to the first two sentences in the trial court's remarks set out above. It is conceded the first sentence, taken alone, could be construed to mean the trial court might have been more lenient had defendant not, in the trial court's opinion, perjured himself. However, defendant maintains the second sentence, which begins with the phrase "In other words," more clearly defines what it was the trial court wanted of defendant. The contention is that the trial court conditioned leniency on defendant's admission of guilt and thus violated defendant's right to a trial and his right not to testify against himself.

Defendant relies on *Spevack v. Klein,* 385 U.S. 511, 514–515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574, where the Court said:

"We said in *Malloy v. Hogan:*

" 'The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence.' 378 U.S., at 8, 84 S.Ct., at 1493.

"In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in *Griffin v. State of California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' * * * *."

He also relies on *United States v. Jackson,* 390 U.S. 570, 581–582, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138, where the following statements appear:

"Under the Federal Kidnapping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die. Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. * * *

" * * * Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. * * * [citing authorities]. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive. * * *."

Defendant contends it is apparent from the trial court's remarks a price was exacted for defendant's exercise of his constitutional rights.

*State v. Drake,* 224 N.W.2d 476 (Iowa 1974), is also heavily relied upon by defendant. In that case, this court faced the very issue presented here and said:

"We have said a sentence which is within the statutory discretion of the trial court· (as this one was) will not be disturbed on appeal except upon a showing of abuse of discretion. *State v. Stakenburg,* 215 N.W.2d 265, 266, 267 (Iowa 1974). However, we cannot permit a sentence to stand when the record shows it was imposed for reasons which violate defendant's right to assert her constitutional defenses to the charges against her.

"In the matter before us, the trial court denied defendant's request for probation with this statement:

" 'I am inclined to agree with you, Mr. Rosenberg, that this is a case where this lady would probably have been given probation had she entered a plea of guilty, but due to the large number of items that were involved and separate charges that were involved, my feeling is that the first step in rehabilitation is a willingness to admit you're wrong and to come in and offer to straighten the matter out entirely.  *  *.'

" *  *  *

"It cannot be gainsaid that the sentence in the present case was imposed *only* because defendant refused to plead guilty. The trial court frankly said as much in pronouncing sentence.  Defendant had a right to her trial.  The fact that the trial court felt it would have been a giant step toward eventual rehabilitation if she had admitted guilt does not override this constitutional right without penalty for exercising it.  *  *  * [citing authorities].  If it did nothing else, this procedure certainly violated defendant's Fifth Amendment protection against self-incrimination, for at that time she could still appeal from a conviction she claimed was unfairly reached. We find it was error to deny her the probation to which she was otherwise entitled simply because she refused to forego her constitutional rights."  224 N.W.2d at 479–480.  (Emphasis in original).

The State argues the *Drake* holding is inapplicable to the case at bar for the reason defendant was not denied leniency "*only* because defendant refused to plead guilty."  The State insists the trial court examined the entire record and all relevant factors bearing upon a sentencing decision in keeping with the sentencing guidelines established by this court.  The following language from *State v. Davis*, 195 N.W.2d 677, 678 (Iowa 1972), is illustrative of those guidelines:

"As we have frequently said, in determining proper sentence all pertinent matters, including the nature of the offense, the

attending circumstances, defendant's age, character and propensities and chances of reform, should be considered.  *  *  * [citing authorities]."

In reply to the State's contention *State v. Drake*, supra, has a limited scope of application, defendant points out the trial court in *Drake* in fact did consider other factors in its sentencing determination.  Defendant reads *Drake* as requiring resentencing when defendant's exercise of a constitutional right weighs heavily as a determining factor leading to the sentence.

The issue is whether under the record before us the trial court based its sentence on an impermissible determining factor.

In *Scott v. United States*, 135 U.S.App. D.C. 377, 419 F.2d 264, 269–274 (1969), cited with approval in *State v. Drake*, supra, 224 N.W.2d at 480, is a lengthy analysis by the court of the problems inherent in differential sentencing.  The following excerpts are from that decision:

"The trial judge also stated at the sentencing hearing, 'If you had pleaded guilty to this offense, I might have been more lenient with you.'  The stark import of this comment is that the defendant paid a price for demanding a trial.  In view of the prohibitions the Supreme Court has laid down against making the exercise of Fourth, Fifth, and Sixth Amendment rights costly, the pricetag thus placed on the right to a fair trial which these amendments guarantee would, on first impression, seem clearly impermissible.

"And yet, despite the startling incongruity, empirical evidence supports the proposition that judges do sentence defendants who have demanded a trial more severely. *  *  *

"Much of this adulation for differential sentencing has been rationalized without frank recognition of the fact that whatever its advantages, the practice does exact a price from those who insist upon a trial. But the arguments in favor of differential sentencing cannot be dismissed by a wooden insistence that the exercise of constitutional rights can never be made costly.  *  *  *

"  *   *   *

"Two arguments inevitably appear whenever differential sentencing is discussed. The first is that the defendant's choice of plea shows whether he recognizes and repents his crime. One difficulty with this argument is that no court or commentator has explained why a defendant's insistence upon his self-incrimination privilege is not also evidence of a lack of repentance. Or his insistence that evidence unconstitutionally seized should not be admitted.

"Repentance has a role in penology. But the premise of our criminal jurisprudence has always been that the time for repentance comes after trial.   *   *   *

"There is a tension between the right of the accused to assert his innocence and the interest of society in his repentance. But we could consider resolving this conflict in favor of the latter interest only if the trial offered an unparalleled opportunity to test the repentance of the accused. It does not. There is other, and better, evidence of such repentance. The sort of information collected in presentence reports provides a far more finely brushed portrait of the man than do a few hours or days at trial. And the offender while on probation or in prison after trial can demonstrate his insight into his problems far better than at trial.

"  *   *   * [W]ith the inducement of a lighter sentence dangled before him, the sincerity of any cries of *mea culpa* becomes questionable. Moreover, the refusal of a defendant to plead guilty is not necessarily indicative of a lack of repentance. A man may regret his crime but wish desperately to avoid the stigma of a criminal conviction.

"  *   *   *

"The second argument for differential sentencing is necessity. Most convictions, perhaps as many as 90 per cent in some jurisdictions, are the product of guilty pleas. Unless a large proportion of defendants plead guilty, the argument runs, the already crowded dockets in many jurisdictions would collapse into chaos.   *   *   *

"  *   *   *

"When a defendant pleads guilty in exchange for the promise of the prosecutor or court, a subsequent challenge to the voluntariness of his plea raises a recognized constitutional issue. When the accused refuses to plead guilty and subsequently receives a heavier sentence, the invisibility with which the system operates in individual cases too often conceals the constitutional issue. But the problem is the same in both contexts. Whether the defendant surrenders his right to a trial because of a bargain with court or prosecutor, or exercises his right at the cost of a stiffer sentence, a price has been put on the right.

"  *   *   *

"Thus, to the extent that the appellant here received a longer sentence because he pleaded innocent, he was a pawn sacrificed to induce other defendants to plead guilty.   *   *   *

"  *   *   *

"If inducements are to be offered for guilty pleas, there are strong reasons why the court should not be the party to offer them. The trial judge may sacrifice his ability to preside impartially at trial by becoming too involved with pre-trial negotiations. Even if he does not, it may so appear to the defendant. It is important not only that a trial be fair in fact, but also that the defendant believe that justice has been done. The accused may fairly doubt this if he thinks the judge begrudges him the exercise of his right to trial. Moreover, the defendant's uncertainty concerning the expectations or wishes of the judge will prevent his exercise of the best judgment in deciding upon a plea.

"  *   *   *

"  *   *   * The policy announced by the trial judge may not endanger his actual impartiality at trials as much as his participation in plea bargaining sessions might. And we certainly do not criticize the impartiality displayed by the experienced trial judge in this case. But we cannot ignore the impact of such a policy on the appearance of justice to criminal defendants and their ability to choose wisely between a plea

of guilty and an exercise of their right to trial."

In *Poteet v. Fauver,* 517 F.2d 393, 395 (3 Cir. 1975), the court reversed the New Jersey Supreme Court's holding in *State v. Poteet,* 61 N.J. 493, 295 A.2d 857, but quoted with approval the following language included therein:

" '[2–4] The controlling principles are easily stated although not as easily applied. Surely punishment may not exceed what the man and his offense would warrant merely because he went to trial. * * * .' "

Defendant maintains the analysis and rationale of the court in *Scott v. United States,* which he cites in written brief and argument, are based on solid constitutional grounds and warrant the conclusion defendant's contention the trial court relied on an improper factor when imposing sentence is meritorious.

Nevertheless, it must be pointed out that other courts have appeared hesitant to adopt the *Scott* analysis.

*United States v. Floyd,* 496 F.2d 982, 989 (2 Cir. 1974), cert. den., *Miller v. United States,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664, has this statement:

"Miller further contends that the district court, in imposing upon him a six month jail sentence under a statute that authorized a maximum five year term of imprisonment, improperly commented to Miller that '[y]ou exercised your right, which you have a right to do, to stand trial, but you didn't take the first step toward rehabilitation which was coming forward and telling the truth.'

"Although Judge Metzner should have carefully avoided any suggestion in his comments at the sentencing hearing that he was taking into account the fact that Miller had not pleaded guilty but had put the government to its proof, we are satisfied that the comment to Miller reflected no more than the judge's consideration of whether Miller had taken the first step toward rehabilitation by recognizing that he was at fault. As the court said in *Gol-*

*laher v. United States,* 419 F.2d 520, 530 (9 Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969):

" 'the first step toward rehabilitation of an offender is the offender's recognition that he was at fault . . . . [N]o fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.'

"Upon the record as a whole, including Miller's lenient sentence, we hold that the judge did not penalize him for standing trial or for remaining silent, but that he did properly consider his need for rehabilitation."

In *United States v. Lehman,* 468 F.2d 93, 110–111 (7 Cir. 1972), cert. den., 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232, the trial court's remarks at the defendant's sentencing were similar to those in *Scott* and in the instant case, and the court said:

"The court seemed to be saying: (1) it would have looked more sympathetically on the plea for leniency if Lehman had pleaded guilty; and (2) * * *. The first group of remarks is of greater concern to us, for it does suggest that the district court might have been penalizing Lehman for exercising his rights, a 'forbidden reason.' * * * [citing authorities].

"We are persuaded, however, that the sentencing court merely employed unfortunate phraseology and was not, in fact, imposing an unlawful penalty. * * * We think that the court was explaining, albeit somewhat ineptly, that he considered a policy of leniency following a plea of guilty to be proper but that sentence concessions flowing from such a plea are inapplicable to the full trial situation. This philosophy is not the same as the view that a defendant should receive an 'extra severe' sentence if he chooses to go to trial.

"The sentence actually imposed further belies the contention that Lehman was improperly punished. * * * ."

It cannot be denied that the second circuit and the seventh circuit in *Floyd* and *Lehman,* respectively, do not go as far as the court in *Scott,* supra. However, *Floyd*

and *Lehman* can be factually distinguished on the basis of the lenient treatment ultimately received by the defendants in those cases. In the case before us defendant was given the maximum sentence under the statute violated.

■ The trial court's remarks in the case at bar cannot be shrugged off as merely "unfortunate phraseology." A defendant's right to demand a trial and to force the state to present its evidence to a fact finder is too fundamental to be so easily dismissed. The exercise of that right cannot be chilled by exacting a price therefor.

In *Johnson v. State*, 274 Md. 536, 336 A.2d 113, 116–117, the Court of Appeals of Maryland dealt with the very problem now before this court and made the following statements:

"Even though we firmly believe that the judge at sentencing can and should take into account a broad spectrum of considerations, there do exist, in order to protect the fundamental rights of the offender, restrictions on this latitude. Thus, in view of what is at stake for one who is charged with a crime, it is improper to conclude that a decision, constitutionally protected, not to plead guilty and in doing so to require the State to prove the defendant's guilt beyond a reasonable doubt, is a factor which ought to, in any way, influence the sentencing judge to the detriment of the accused. In the case now before us, when Judge Powers said, 'if you had come in here with a plea of guilty . . . you would probably have gotten a modest sentence,' he indicated that he, at least to some degree, punished Johnson more severely because he failed to plead guilty and, instead, stood trial. Although a reading of the judge's remarks in full does not necessarily demonstrate that a more severe sentence was imposed, the words just quoted manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant. Accordingly, our part in the administration of justice requires that we find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged. This is as unallowable a circumstance as would be the imposition of a more severe penalty because a defendant asserted his right to counsel or insisted on a jury rather than a court trial.

"This view is in accord with that of nearly all of the courts, both federal and state, in this country that have directly considered this question. * * * [citing authorities]. The words of Judge Weinfeld in *United States v. Tateo*, supra, 214 F.Supp. [560] at 567 [ (S.D.N.Y.1963) ] are particularly instructive:

" 'No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penalty—that if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term. To impose upon a defendant such alternatives amounts to coercion as a matter of law.' "

■ We conclude the fact a defendant has exercised the fundamental and constitutional right of requiring the state to prove at trial his guilt as charged and his right as an accused to raise defenses thereto is to be given no weight by the trial court in determining the sentence to be imposed after the defendant's guilt has been established.

The problem at this point is whether the statement of the trial court, quoted earlier, demonstrates it did in fact give weight to the fact defendant had exercised his constitutional rights.

The record including the presentence investigation discloses substantial circumstances which would warrant the sentence

imposed. See *State v. DeRaad*, 164 N.W.2d 108, 112–113 (Iowa 1969) and *State v. Stakenburg*, 215 N.W.2d 265, 266–267 (Iowa 1974).

The trial court must carefully avoid any suggestions in its comments at the sentencing stage that it was taking into account the fact defendant had not pleaded guilty but had put the prosecution to its proof. Viewed in this light it is our opinion the quoted portion of the colloquy between the court and defendant at the sentencing stage manifests that an impermissible consideration may well have been employed in imposing the sentence. Any doubt in this regard must be resolved in favor of defendant.

Consequently, this case must be remanded for the sole purpose of resentencing defendant in accordance with the principles set forth herein.

II. In light of the conclusion reached in the first division of this opinion we deem it unnecessary to reach the issue raised by defendant's second contention.

III. In his remaining contention defendant maintains that on remand he is entitled to have sentence reimposed by a different judge. We disagree.

There does not appear to be any compelling reason for granting defendant's request. Our conclusion, stated earlier, that the statements of the court at the sentencing stage manifested that an impermissible consideration may well have been employed in imposing the sentence does not establish the trial court concerned demonstrated bias or prejudice against the defendant which would necessitate a different sentencing judge on remand.

Defendant's request is denied.

The case is therefore—Remanded for resentencing.