# IN THE COURT OF APPEALS OF IOWA

No. 12-2167
Filed April 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM J. MOEHN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Michael G. Dietrich, District Associate Judge.

William Moehn appeals from judgment and sentences imposed upon his convictions of aggravated domestic abuse and aggravated assault. **CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Justin Stonebrook, Assistant County Attorney, for appellee.

Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

William Moehn appeals from judgment and sentences imposed upon his convictions of aggravated domestic abuse and aggravated assault. He contends trial counsel was ineffective in failing to request a jury instruction defining specific intent. He also contends the district court considered an improper factor in sentencing. We reject the ineffective-assistance-of-counsel claim, but vacate the sentences and remand for resentencing.

**I. Background Facts and Proceedings.**

William Moehn and Kelli Moehn had been married for twenty-seven years when, on April 13, 2012, Kelli went to their storage garage. With the assistance of Darrin Schwind, the owner of a local garage door company, Kelli changed the locking code of the garage door. Before Kelli left the area, William arrived and attempted to open the storage garage. When his code did not work, he chased Kelli to her van. Kelli was in her vehicle but was not able to lock the door. William reached in and punched her and shook her. He then grabbed the bag Kelli was carrying, which she was using as a purse. Schwind told William "to knock it off and [William] told [Schwind] to shut the fuck up or I'm going to knock you out also." Schwind pulled out his cell phone to call 9-1-1 and William ran back to his own car. Kelli yelled: "Stop, stop, don't take that. I need that. Stop." Schwind moved to stand in front of William's car to keep him from leaving. Kelli, too, stood in front of William's car.

William revved the engine of his car and "lurched toward" the two, braked, and advanced again. William's car came in contact with Kelli and came "within an inch" of Schwind. Schwind jumped out of the way towards the passenger side

of the vehicle to avoid being struck. Kelli moved to the driver's side and—through the still open driver's side door—attempted to grab her bag. William had his hand on the door. William "stomped on the gas, floored it, and spun out of the alley and turned right" down the street. The door hit Kelli, causing her to roll out into the middle of the street.

As a result of this incident William Moehn was charged with aggravated domestic abuse (against Kelli), in violation of Iowa Code sections 708.2A(2)(c) and 236.2 (2011), and with aggravated assault (against Schwind), in violation of sections 708.1 and 708.2(3).

At trial, William testified in his own defense. He denied punching Kelli when they struggled over her bag. He testified he "[g]ot the purse and ran to my car," and that it was his intent to "go home and see if there was any money in it."

> Q. Well, were you—there was testimony that you were revving the engine and lurching the car at your wife and at Mr. Schwind. Is that accurate? A. I moved forward a little bit, but I didn't move very much, just get them to move. And they moved.
> Q. Were you trying to do anything other than pass by them and leave the scene? A. No, I wasn't.
> . . . .
> Q. Did you—Did you deliberately try to push the door open and run into her? A. No.
> Q. Could you explain exactly what happened then? A. She was hanging on to my door frame. My window was open. She was trying to reach in and get the purse that was sitting on my lap. And I moved it over to the passenger seat so she couldn't get it. And then she ran out in front of the car and she—he moved and I went driving off. And she was still hanging on to my car door.
> Q. Did you ask her to let go? A. Yeah. I said I'm leaving, you better let go. And she didn't let go of the car.
> Q. So if I understand correctly, she hung on to your car door and fell off of your car door as you were leaving? A. Yes.
> Q. You did not open your car door and strike her with your car door? A. No, I didn't.
> Q. If she had gotten off the car and allowed you to close the door, would you have left without her getting hurt? A. Yes.

> Q. At any point did you intend to strike Mr. Schwind with the car? A. No.
>
> Q. Did he present—How much difficulty did he present to you when—in being in your way? A. Not much. When I started moving up, he moved out of the way.
>
> Q. Did you intend in anything you did to injure Kelli Moehn? A. No. I didn't intend to do nothing to her.
>
> Q. And she got her purse back— A. Yeah.
>
> Q. —later at home? A. Yeah, at home. Yes.
>
> . . . .
>
> Q. Now, what are your thoughts when—when you were in motion and Kelli fell off the door? A. I was hoping she didn't get hurt, heading home to see if there was any money in the bag.

On cross examination, the prosecutor asked, "So your intent was to threaten them with that car to get them to move?" William responded, "No. But my intentions was [sic] to leave and they wouldn't—they were standing in front of my car, so I'm leaving, move."

The jury found William Moehn guilty as charged and he now appeals.

**II. Ineffective assistance of counsel.**

Moehn contends his trial counsel was ineffective for failing to request a jury instruction defining specific intent.

The right to assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution is the right to "effective" assistance of counsel. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). We review constitutional claims de novo. *Id.* at 783.

"To establish a claim of ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence: (1) that trial counsel failed to perform an essential duty, and (2) that prejudice resulted from this failure." *State v. Fountain*, 786 N.W.2d 260, 265-66 (Iowa 2010). "To establish prejudice, the defendant must demonstrate the 'reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The ineffectiveness claim fails if the defendant is unable to prove either element of this test. *Fountain*, 786 N.W.2d at 266.

The jury received the following instructions.

### Instruction No. 12

To commit a crime, a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and he did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his acts.

### Instruction No. 13

The State must prove all of the following elements of the crime of Aggravated Domestic Abuse Assault (Count I):

1. On or about the 13th day of April, 2012, the defendant did an act which was intended to cause pain or injury to Kelli S. Moehn or which was intended to result in physical contact which was insulting or offensive to Kelli S. Moehn or which was intended to place Kelli S. Moehn in fear of immediate physical contact which would have been painful, injurious, insulting, or offensive to her.

2. The defendant had the apparent ability to do the act.

3. The defendant used or displayed a dangerous weapon in connection with the assault.

4. The act occurred between family or household members.

If the State has proved all of these numbered elements, the defendant is guilty of Aggravated Domestic Abuse Assault If the State has proved only elements 1, 2, and 3, then the defendant is guilty of Aggravated Assault. If the State has proved only elements 1, 2, and 4, the defendant is guilty of Simple Domestic Abuse Assault. If the State has proved only elements 1 and 2, the defendant is guilty of Simple Assault. If the State has failed to prove either element 1 or 2, the defendant is not guilty.

### Instruction No. 14

The State must prove all of the following elements of the crime of Aggravated Assault (Count II):

1. On or about the 13th day of April, 2012, the defendant did an act which was intended to cause pain or injury to Darrin W.

Schwind or which was intended to result in physical contact which was insulting or offensive to Darrin W. Schwind or which was intended to place Darrin W. Schwind in fear of immediate physical contact which would have been painful, injurious, insulting, or offensive to him.

2. The defendant had the apparent ability to do the act.

3. The defendant used or displayed a dangerous weapon in connection with the assault.

If the State has proved all of these numbered elements, the defendant is guilty of Aggravated Assault. If the State has proved only elements 1 and 2, then the defendant is guilty of Simple Assault. If the State has failed to prove either element 1 or 2, the defendant not guilty.

Instruction No. 15

The definitions of certain terms used in these instructions are as follows:

ASSAULT

Concerning Instruction Nos. 13 and 14, an "Assault" is committed when a person has the apparent ability to do an act and does an act to another person which is meant to cause pain or injury; result in physical contact which will be insulting or offensive; or place another person in fear of immediate physical contact which will be painful, injurious, insulting, or offensive.

. . . .

DANGEROUS WEAPON

A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, . . . [or] any sort of instrument or devise which is actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Jury instructions are read together, not piecemeal. *See State v. Bennett*, 503 N.W.2d 42, 45 (Iowa Ct. App. 1993).

The jury instructions did *not* include Iowa Criminal Jury Instruction 200.2, which provides:

"Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

Because determining the defendant's specific intent requires you to decide what [he] [she] was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the

defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of [his] [her] acts.

In *Fountain*, the defendant was charged with domestic abuse assault causing bodily injury. 786 N.W.2d at 262. On appeal, the defendant contended his counsel was ineffective in failing to request a specific intent instruction, arguing that with a specific intent instruction the jury may have found that he did not intend to make any insulting or offensive physical contact with his then girlfriend. *Id.* The supreme court concluded that defense counsel breached an essential duty in failing to request a specific intent instruction because his "attorney should have been aware of the case law declaring that assault includes an element of specific intent." *Id.* at 266.

But because opening and closing arguments were not reported,[1] the *Fountain* court concluded the record was inadequate to determine whether defense counsel's strategy was adequate or prejudicial. *Id.* at 267. The supreme court observed:

> After reviewing the facts of this case and the evidence presented, we conclude only trial strategy could explain counsel's failure to request a specific intent instruction, as specific intent is a higher burden for the state to prove. It appears to be undisputed that Fountain and [his girlfriend] had consensual sex twice on the night in question, and it was not until the third sexual encounter that an assault was alleged; however, it is unclear whether the prosecution was alleging that the assault was incidental to the third sexual encounter or whether the assault was alleged to be a separate act unrelated to the sexual encounter. *If the assault was alleged to be incidental to the sexual encounter a specific intent instruction may have aided Fountain's defense.* On the other hand, if an assault separate from the sex was alleged and the defense was simply that it did not occur, the distinction between a general intent instruction and a specific intent instruction may not have aided Fountain. If the defense strategy is to deny that any

---

[1] We are not similarly hamstrung.

assaultive contact occurred, the individual elements of assault become unimportant.

*Id.* at 266-67 (emphasis added).

Here, as in *Fountain*, defense counsel failed to request a specific intent instruction, which is an element of both assault charges. In failing to request a specific intent instruction, pursuant to *Fountain*, we must conclude trial counsel breached an essential duty. *See id.* at 266.

But we conclude there is no probability the result of the trial would have been different even if the jury had been instructed that "'[s]pecific intent' means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." In both marshalling instructions, the jury was instructed the State must prove Moehn did an act "intended to cause pain or injury." The jury was also instructed the State must prove that Moehn "used or displayed a dangerous weapon in connection with the assault." As the court instructed, the dangerous weapon was Moehn's car driven toward Kelli and Schwind and "actually used in such a way as to indicate the user intended to inflict death or serious injury." The jury necessarily found Moehn "intended to inflict death or serious injury" in the use of his vehicle. A separate instruction on specific intent would not have changed the outcome of the trial.

In *Fountain*, where consensual sexual relations had preceded the alleged assaultive conduct, the defendant successfully argued that with a specific intent instruction the jury may have found that he did not intend to make any insulting or offensive physical contact with his then girlfriend. 786 N.W.2d at 262. The case before us is not analogous.

In closing arguments, defense counsel noted that the jury instructions required the State to prove that a dangerous weapon was used in connection with the assault. He also noted the jury instructions defined a dangerous weapon as "an instrument or device which is actually used in such a way as to indicate the user intended to inflict death or serious injury." Counsel argued William did not intend to inflict a serious injury on Kelli with his car:

> He's trying to get by two people. He's going a little, he's stopping, he's going [a] little, he's stopping. Anybody who has been to an Iowa football game or a concert or a big event has been in a situation where you're trying to inch your car along and get where you're going. There are people walking around and you're doing the best you can to advance your car, get where you're going and not hit anybody.
> And that's exactly what Bill Moehn was doing. And he did it to—well, with respect to Darrin Schwind, that—didn't hit him.

Concerning the charge related to Kelli, defense counsel argued "we're back to the question, did Bill use the car in such a way as to inflict serious injury on Kelli?" The jury found he had.

Moehn argues on appeal he was prejudiced because the instructions given reduced the State's burden of proof. The State, however, argues that the instructions given adequately informed the jury that they were required to find the defendant acted with specific intent in that they were told that he must have done

> an act which was intended to cause pain or injury to [each asserted victim] or which was intend to result in physical contact which was insulting to [each asserted victim] or which was intend to place [each asserted victim] in fear of immediate physical contact which would have been painful, injurious, insulting, or offensive.

The State contends the jury was thus informed the defendant had to have acted "with a specific purpose in mind," which is the essence of the specific intent instruction. Though the wiser course is to include the specific intent instruction,

because the question presented to the jury was whether Moehn used his vehicle in a manner intended to inflict serious injury or death, we agree that Moehn has suffered no prejudice by the omission and his ineffectiveness claim thus fails.

**III. Sentencing.**

Moehn also argues the sentencing court considered an inappropriate matter at sentencing.

A claim of an illegal sentence is not subject to traditional error preservation rules. *See State v. Shearon*, 660 N.W.2d 52, 57 (Iowa 2003).

> The imposition of a sentence is generally within the discretion of the trial court and will be disturbed only upon a showing of abuse of discretion. An abuse of discretion will be found only when the discretion is exercised on grounds which are clearly untenable or to an extent clearly unreasonable. The use of an impermissible sentencing factor is viewed as an abuse of discretion and requires resentencing.

*State v. Thomas*, 520 N.W.2d 311, 313 (Iowa Ct. App. 1994) (citations omitted).

A "trial court must carefully avoid any suggestions in its comments at the sentencing stage that it was taking into account the fact defendant had not pleaded guilty but had put the prosecution to its proof." *State v. Nichols*, 247 N.W.2d 249, 256 (Iowa 1976); *accord State v. Knight*, 701 N.W.2d 83, 87 (Iowa 2005) (but noting "this prohibition does not preclude a sentencing court from finding a lack of remorse based on facts other than the defendant's failure to plead guilty").

At Moehn's sentencing, the district court stated, "The reasons for my sentence, first of all, you didn't accept your responsibility for your action. You went to trial, and I felt you absolutely had no defense. None." The State concedes the sentencing court considered an improper factor. We are required

to vacate the sentence and remand for resentencing.  *See Nichols*, 247 N.W.2d at 256.

We affirm Moehn's convictions and remand for resentencing.

**CONVICTIONS AFFIRMED, SENTENCES VACATED, AND REMANDED FOR RESENTENCING.**