# IN THE SUPREME COURT OF IOWA

No. 20–1647

Submitted January 19, 2022—Filed June 10, 2022

**STATE OF IOWA,**

Appellee,

vs.

**ERICA LYNE WEST VANGEN,**

Appellant.

---

Appeal from the Iowa District Court for Linn County, Russell G. Keast, District Associate Judge.

A defendant challenges her conviction and sentence for criminal mischief in the fourth degree. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

Erica West Vangen was convicted of criminal mischief in the fourth degree after the prosecution presented alternative theories to the jury—she either used a baseball bat to smash the windows of a car or she drove others to the scene and one of them smashed the windows. She argues that neither was supported by sufficient evidence, but even if one was supported, a new statute requiring the jury's general verdict to be affirmed as long as one theory was supported violates her constitutional rights. *See* 2019 Iowa Acts ch. 140, § 32 (codified at Iowa Code § 814.28 (2019)) (prohibiting an appellate court from reversing "a verdict on the basis of a defective or insufficient theory if one or more of the theories presented . . . is sufficient to sustain the verdict on at least one count").

On our review of the evidence, both theories presented to the jury were supported by sufficient evidence, so we need not take up the challenge to Iowa Code section 814.28. We reject West Vangen's sentencing challenges and affirm her conviction and sentence.

I.

Jonnae Cole lived with her mother, Monick Williams, and Monick's husband, Alex, in March 2020. Monick woke up between 4:00 a.m. and 4:30 a.m. on March 30 to her husband arguing on the phone with someone named Yayo, who was threatening to do something to Monick when she left to go to work. Soon after, Monick and Alex left the house in Jonnae's Buick Rendezvous to pick up one of Alex's friends. They returned home a little past 5:00 a.m. and parked Jonnae's car on the street in front of the house. Later in the morning,

Jonnae discovered her Rendezvous had been vandalized. Both driver's-side windows were shattered, the driver's-side mirror was broken, and a front tire was slashed.

During his investigation, Cedar Rapids Police Officer Tyler Richardson discovered that a Ring camera outside of a neighbor's house across the street captured the incident. When he watched the video, he saw a Buick sedan drive up and stop next to Jonnae's car at 5:39 a.m. With the passenger side of the Buick closest to the neighbor's Ring camera, and Jonnae's car on the other side of the Buick, it was difficult to see the actions on the driver's side of the Buick in the video. Even so, the video revealed that two individuals got out of the Buick, one from the passenger side and one from the driver's side, and caused the damage to Jonnae's car. Officer Richardson could not download the video, so he videotaped the Ring video as it played, and that video was shown to the jury at West Vangen's trial.

Monick identified West Vangen as a potential suspect because Alex had had an affair with West Vangen and owed her money. When Officer Richardson interviewed West Vangen, she eventually admitted she drove her car to the incident, but she denied causing any of the damage to the Rendezvous. During the interview, she identified "Kosher" as the only other person in the car with her. Officer Richardson searched West Vangen's Buick LeSabre, which was similar to the car he saw in the surveillance video, and found a small aluminum baseball bat behind the driver's seat with marks consistent with being used to hit safety glass.

The State charged West Vangen with criminal mischief in the fourth degree. She pleaded not guilty, and the case proceeded to a jury trial. At trial, West Vangen testified there were actually two other people in the car with her and those people exited the vehicle and caused the damage to Jonnae's vehicle. The State presented two alternative theories to the jury. Under the first theory, the State argued West Vangen was a principal and she exited the driver's seat of her car, took out a short metal baseball bat, and smashed the windows and mirror on Jonnae's vehicle. Under the second theory, the State argued West Vangen aided and abetted the crime. The State argued that even if there were three people in the car, which it contested, West Vangen drove her husband (who was identified as the person getting out of the passenger side of the Buick) and a third person to the vehicle knowing they planned to damage the car.

The jury was instructed that they could find West Vangen guilty of criminal mischief in the fourth degree under either a principal or an aiding-and-abetting theory, but they did not need to agree on which theory. The jury returned a general verdict finding West Vangen guilty of criminal mischief. The district court sentenced her to thirty days in jail but suspended the term and placed her on unsupervised probation for two years. The court also ordered West Vangen to pay victim restitution in the amount of $315 and to pay category "B" restitution for her court-appointed attorney in the amount of $60. West Vangen appealed her conviction and sentence, and we retained the case.

II.

West Vangen challenges the sufficiency of the evidence to support her conviction on both theories presented by the State. Previously, if a jury returned a general verdict in a case involving multiple theories to establish the same offense but not all theories were supported by sufficient evidence, the defendant would generally be entitled to a new trial without the unsupported theories. *See State v. Tyler*, 873 N.W.2d 741, 753–54 (Iowa 2016) (holding we reverse a general verdict when not all theories are supported by sufficient evidence). That is no longer the case as of July 1, 2019. Rather, "[i]f the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a[n] . . . insufficient theory if one or more of the theories presented and described in the . . . jury instruction is sufficient to sustain the verdict on at least one count." Iowa Code § 814.28 (2020). West Vangen argues that even if we find one theory to be supported by the evidence, application of section 814.28 would violate her constitutional rights.

Upon our review of the sufficiency of the evidence, *see State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020), we conclude the record contained sufficient evidence to support West Vangen's conviction on both theories of liability. Iowa Code section 814.28 is therefore not implicated, and we do not consider West Vangen's constitutional challenges to its application.

In conducting our analysis, we "consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and

reasonably be deduced from the record evidence.' " *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). But, "[e]vidence which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (en banc). "Sufficient or substantial evidence is such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995).

### A.

We first consider whether there was sufficient evidence for the jury to find West Vangen guilty as a principal in the criminal mischief. The jury was instructed that the State had to prove beyond a reasonable doubt that West Vangen "did an act . . . that damaged a vehicle belonging to Jonnae Cole;" that she acted "with the specific intent to damage the property;" and "she did not have the right to do so." *See* Iowa Code § 716.1. The State met this burden.

At trial, West Vangen testified that her husband and Yayo were messaging Alex throughout the night and into the morning of March 30. During the early morning hours, Yayo and her husband told her to drive them to collect the money Alex owed to West Vangen. She pulled up in front of Monick and Alex's house, and Yayo told her to stop on the street near the Rendezvous, which she knew Alex had driven in the past. According to West Vangen, Yayo told her to stay in the car and he got out of the backseat on the driver's side and bashed in the windows on the Rendezvous.

West Vangen argues the evidence establishes only that she transported her husband and Yayo to Jonnae's car but there was insufficient evidence to prove she actively participated in vandalizing the vehicle. She relies on her testimony that Yayo got out of the backseat, the inability to tell from the video whether the person who got out on the driver's side got out from the driver's seat or the backseat, and her theory that the illuminated brake lights on her car that can be seen in the video show she remained in the car with her foot on the brake pedal.

In response, the State relies on Officer Richardson's testimony. Reviewing the video as it played for the jury, Officer Richardson testified he could see there was an individual between the cars swinging an object at the Rendezvous. Officer Richardson also testified that when he watched the original Ring video, which was much clearer than the video of the video shown at trial, he could see the driver get out of the vehicle. Officer Richardson testified that there was a "flash of light" from the taillight of West Vangen's LaSabre when it pulled up next to the Rendezvous, indicating the vehicle had been put into park. On cross-examination, he agreed that the video showed that the LeSabre's brake lights remained illuminated the entire time it was stopped next to the Rendezvous until the LeSabre drove away. When asked if that changed his mind about whether the driver could have gotten out of the car, he responded the car's emergency brake or parking brake could have accounted for the illuminated brake lights.

There is ample evidence that two people got out of West Vangen's LeSabre and damaged Jonnae's Rendezvous. And West Vangen admitted she was driving.

The question for the jury was whether there was enough evidence to establish that West Vangen was the person who got out on the driver's side and can be seen in the video swinging the bat. West Vangen relies heavily on her own testimony, but the prosecution discredited her testimony on a number of points. Most critical on this issue was the bodycam footage of Richardson's interview of West Vangen where she only mentioned a person named Kosher (which West Vangen later admitted was her husband's nickname) as being with her when Jonnae's car was damaged. During her interview with Richardson, she never mentioned a third person or anyone named Yayo being in the car. This alone was enough for the jury to discredit West Vangen's testimony that Yayo was in the backseat of her car.

Ultimately, whether West Vangen got out of the car and damaged Jonnae's car turns on whether the jury believed West Vangen's story or believed Officer Richardson when he testified that he could see the driver get out of the car when he viewed the original Ring video. These are credibility determinations, which we leave to the jury. *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006) ("In determining the correctness of a ruling on a motion for judgment of acquittal, we do not resolve conflicts in the evidence, pass upon the credibility of witnesses, or weigh the evidence."); *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."); *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) ("The very function of the jury is to sort out the evidence presented and place credibility where it belongs.").

The defense theory that the brake lights showed West Vangen remained in the car was also for the jury to decide based on its collective experience. Notably, although West Vangen testified at trial, she never testified that she kept her foot on the brake to explain the continuously illuminated light. This was a theory raised by her counsel during cross-examination of Officer Richardson. But Officer Richardson provided an alternative theory to explain the illuminated brake light. He also pointed out the flicker of light that could be seen in the video indicating the car had been put into park, discrediting the defense theory that the driver's foot needed to remain on the brake pedal. If the jury believed Officer Richardson's explanation, there was sufficient evidence for it to conclude West Vangen was the person who got out of the car on the driver's side and can be seen swinging a bat in the video. In our careful consideration of all the evidence in the light most favorable to the State, we conclude that a reasonable jury could find West Vangen damaged the Rendezvous. *See Blair*, 347 N.W.2d at 421. The evidence supported West Vangen's conviction for criminal mischief under the State's principal theory of liability.

## B.

We next address the State's aiding and abetting theory.

> To sustain a conviction on the theory of aiding and abetting, the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission.

*Tyler*, 873 N.W.2d at 750 (quoting *State v. Spates*, 779 N.W.2d 770, 780 (Iowa 2010)).

West Vangen argues there was insufficient evidence she knew the purpose of the trip or assisted the others in damaging the Rendezvous. We disagree. Although West Vangen argues she thought she was driving to Jonnae Cole's house at 5:29 in the morning to collect money she was owed, the jury could easily reject her testimony. *See, e.g., Thornton*, 498 N.W.2d at 673. West Vangen admitted she knew her husband and Yayo were texting with Alex throughout the night, she drove them to the house early in the morning, and she drove on the wrong side of the street to stop her vehicle directly alongside Jonnae's car. She also immediately drove off after the damage was done without attempting to collect any money. Viewing the evidence in the light most favorable to the State, a reasonable jury could infer West Vangen knew damaging the vehicle was the plan beforehand, and she actively participated by driving to and away from the scene. We conclude sufficient evidence was presented to support the jury's verdict that West Vangen aided and abetted the damage to Jonnae Cole's vehicle. *See, e.g., Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) (stating that aiding and abetting "may be inferred from circumstantial evidence including presence, companionship and conduct before and after the offense is committed").

Because we conclude that there was sufficient evidence for both theories, Iowa Code section 814.28 is not implicated, and we need not address it.

### III.

We turn to West Vangen's challenges to her sentence. At the December 4, 2020 sentencing, the district court ordered West Vangen to reimburse the state $60 toward her court-appointed attorney's fees. West Vangen appeals that order,

challenging the constitutionality of the newly enacted process for determining if she had the reasonable ability to pay category "B" restitution, which includes reimbursement of the court-appointed attorney's fees.

West Vangen does not dispute that she received a notice of the new process required to challenge her ability to pay category "B" restitution, filed in her case on July 20. She admits she did not request the district court make a reasonable-ability-to-pay determination (either before or after her sentencing), submit the required financial affidavit, or otherwise challenge the restitution order in the district court. West Vangen challenges only the constitutionality of the revised procedural requirements as resulting in an illegal sentence, which she asserts is not subject to our normal preservation of error requirements. Assuming for purposes of this direct appeal that she is correct, *see State v. Gross*, 935 N.W.2d 695, 699 (Iowa 2019) ("Gross can raise the lack of a reasonable-ability-to-pay hearing for the first time in a timely direct appeal."), we reject her constitutional challenge. We review the constitutionality of the challenged statute de novo. *See State v. Dudley*, 766 N.W.2d 606, 612 (Iowa 2009).[1]

---

[1]In *State v. McCalley*, we concluded the defendant waived her challenge to application of Iowa Code section 910.2A to her sentence by "failing to avail herself of multiple opportunities to timely request a determination on her ability to pay." 972 N.W.2d 672, 680 (Iowa 2022). When asked "at sentencing whether she would 'like to address reasonable ability to pay category B costs today or reserve that for a later date,' McCalley opted to 'reserve that discussion for a later date,' " but then never did. *Id.* We concluded that "[a]ny hardship McCalley experienced due to the district court's application of the amended legislative scheme resulted from her own failure to utilize the procedures available to her." *Id.* Here, West Vangen was not given that same express opportunity at her sentencing hearing. Further, West Vangen presents her challenge more as a facial challenge to the changed process, including the requirement for her to initiate a reasonable-ability-to-pay determination, rather than an as-applied challenge to the $60 order. To the extent we can, we address West Vangen's constitutional challenges.

Effective June 20, 2020, the Iowa general assembly modified the process for determining whether a criminal defendant has the reasonable ability to pay "category 'B'" items of restitution, including repayment of court-appointed attorney's fees. *See* 2020 Iowa Acts ch. 1074, § 72 (codified at Iowa Code § 910.2A (2020)). The statute starts with a presumption that a criminal defendant has the ability to pay the category "B" items of restitution, Iowa Code § 910.2A(1), but allows the defendant to request a determination by the court, either at or within thirty days after sentencing, and requires the district court to hold a hearing if that request is made, *id.* § 910.2A(2), (3)(*a*). The defendant can overcome the rebuttable presumption and satisfy her burden of showing by a preponderance of the evidence that she lacks the reasonable ability to make payment toward the full amount of the category "B" items by filing the required financial affidavit and submitting to questioning at the hearing. *See id.* § 910.2A(2)(*a*)–(*c*). The district court has broad discretion in making its determination. *Id.* § 910.2A(5) ("A court that makes a determination under this section is presumed to have properly exercised its discretion. A court is not required to state its reasons for making a determination."). Despite the availability of this process, and West Vangen's admitted failure to initiate it, West Vangen argues the process violates her federal and state constitutional rights to counsel and due process. To the extent we can do so on this record, we address each challenge.

A.

The gist of West Vangen's right-to-counsel claim is that requiring indigent defendants to repay their legal expenses will chill their decision to request appointed counsel at the outset of their prosecution. *See Dudley*, 766 N.W.2d at 614 (holding that Iowa Code section 815.9, which charged "an acquitted defendant . . . with the full expense of his legal assistance without regard to whether he will ever have the funds or means to pay the judgment," infringed the acquitted defendant's constitutional right to counsel). But we have already rejected this claim when we held that section 910.2 did not violate a defendant's right to counsel because the statutory scheme limited recoupment of "court-appointed attorney's fees 'to the extent that the offender is reasonably able to do so.'" *State v. Haines*, 360 N.W.2d 791, 794 (Iowa 1985) (quoting Iowa Code § 910.2 (1983)); *see also Fuller v. Oregon*, 417 U.S. 40, 41 (1974) (rejecting a similar challenge to an Oregon recoupment statute that required a convicted defendant to repay the costs of his state-provided defense "when he is indigent at the time of the criminal proceedings but subsequently acquires the means to bear the costs of his legal defense" as a violation of the Sixth Amendment's right to counsel). In *State v. Haines*, we recognized that the Iowa statutory provision went further than the Oregon provision at issue in *Fuller v. Oregon* because the Iowa provision allowed the district court to order an indigent defendant to perform community service in lieu of recoupment of the fees. 360 N.W.2d at 794. But we still found the statute constitutional because that provision, like the

repayment provision, was limited to the extent the defendant was able to perform the public service. *Id.*

That limitation has not changed. *See* Iowa Code § 910.2(1)(*a*)(2) ("Category 'B' restitution shall be ordered subject to an offender's reasonable ability to make payments pursuant to section 910.2A."). An indigent defendant is still protected from repaying the costs of her defense if she lacks the reasonable ability to do so. *See id.* § 815.9(5) ("If the person receiving legal assistance is convicted in a criminal case, . . . the court shall order the payment of [costs and fees incurred for legal assistance] as restitution, *to the extent to which the person is reasonably able to pay* . . . ." (emphasis added)). What has changed is the process for determining whether a defendant has the reasonable ability to pay category "B" costs.

West Vangen argues the following changed procedures make the new procedure so onerous as to violate her right to counsel: (1) presuming that the defendant has the reasonable ability to pay category "B" items, (2) placing the burden on the defendant to rebut that presumption by a preponderance of the evidence, (3) requiring the defendant to request a determination of her ability to pay before the district court will consider it, (4) requiring full restitution if a request is not made within thirty days of sentencing, (5) making a restitution order immediately enforceable, and (6) limiting an offender to the section 910.7 process in seeking modification of a restitution order. According to West Vangen, these modified procedures so changed the restitution landscape that they chill her right to counsel because our precedent held that the court is prohibited from

ordering repayment of her legal fees unless she is able to pay them without hardship, a determination as to whether she can do so must be made before the court is allowed to order restitution, and she must be allowed to petition the court at any time to reduce the amount of the payment.

Iowa Code section 910.2A still requires the court to determine whether a defendant has the ability to repay her legal fees and court costs, but it changes the process by starting with a rebuttable presumption that the defendant is able to do so. That presumption is subject to the defendant proving otherwise by a preponderance of the evidence and providing a required financial affidavit within thirty days of sentencing. These changes are not so onerous as to unconstitutionally chill a defendant's request for appointed counsel. Rather, they recognize the practicalities of making the reasonable-ability-to-pay determination. West Vangen argues the court must consider her "resources, the other demands on [her] own and family's finances, and the hardships [she] or [her] family will endure if repayment is required," *Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984), but all of those facts are uniquely in her possession. The procedural changes recognize that fact and provide a process that ensures the district court has the information needed to make a reasonable-ability-to-pay determination.

West Vangen essentially argues that once a court-appointed counsel is provided to a criminal defendant, her ability to pay for counsel should not be reassessed. This argument was rejected by the United States Supreme Court in upholding the Oregon recoupment statute when it explained:

> A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship.

*Fuller*, 417 U.S. at 53–54. The same is true here, and we likewise reject West Vangen's argument that the new procedures violate her right to counsel.

B.

The changes in the procedures for determining a defendant's reasonable ability to pay are more aptly considered under West Vangen's due process challenge. "The overwhelming weight of federal and state authorities agree that procedural due process in the context of criminal restitution orders requires some kind of notice and an opportunity to be heard." *State v. Jenkins*, 788 N.W.2d 640, 646 (Iowa 2010). "Procedural due process requires notice and an opportunity to be heard 'at a meaningful time in a meaningful manner' prior to depriving an individual of life, liberty, or property." *Dudley*, 766 N.W.2d at 624 (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 241 (Iowa 2002)).

West Vangen does not dispute that she was put on notice of the changed process, so we focus on her challenge to the opportunity to be heard. With respect to a meaningful time, section 910.2A requires a district court to hold a hearing at the defendant's request and allows the defendant to make that request prior to, at, or within thirty days after sentencing. Iowa Code § 910.2A(2), (3)(*a*). If the defendant requests a determination prior to or at sentencing, then the reasonable-ability-to-pay determination is made part of the sentencing order of

judgment. *See id.* § 910.2A(2)(*d*). Even if the defendant waits to request a determination until thirty days after sentencing, a previously entered permanent restitution order as part of the sentencing may be superseded by a subsequent order made after the later hearing. *Id.* § 910.3(8), (10). The process in section 910.2A allows a defendant to timely seek a determination of her ability to pay and, importantly, while the defendant is still represented by counsel. *See* Iowa Rs. Crim. P. 2.28(1), 2.30(1).

With respect to providing the defendant a "meaningful manner" in which to challenge her ability to pay category "B" restitution, West Vangen challenges the statutory presumption that she is able to pay and the burden placed on her to rebut that presumption by a preponderance of the evidence. But a rebuttable presumption that allows a defendant to offer evidence at the relatively low preponderance-of-the-evidence standard applied in civil cases does not per se violate procedural due process. *See LuGrain v. State,* 479 N.W.2d 312, 315–16 (Iowa 1991) (rejecting inmate's due process challenge to a presumption that his refusal to supply a urine sample within two hours of an order for a random drug sample would be treated as a violation of prison policy where he was given the opportunity to rebut the presumption by providing evidence through a urine sample, distinguishing between irrebuttable presumptions, which violate an inmate's right to due process, and rebuttable presumptions, which don't); *see also Todd v. Todd* (*In re Est. of Todd*), 585 N.W.2d 273, 277 n.6 (Iowa 1998) ("Preponderance of the evidence is evidence that is more convincing than opposing evidence. Preponderance of the evidence does not depend upon the

number of witnesses testifying on one side or the other." (quoting Iowa State Bar Ass'n, Iowa Civil Jury Instruction 100.3 (1986))).

West Vangen also characterizes the required financial affidavit as "lengthy" and points out that it must be completed under penalty of perjury. But she fails to identify how requiring the person who has sole access to the pertinent information to provide it in a sworn affidavit prevents her from meaningfully participating in the process. We reject West Vangen's facial challenges to the section 910.2A procedures. And because West Vangen did not take advantage of the process, she has failed to show she was personally denied "an opportunity to be heard 'at a meaningful time in a meaningful manner.'" *Dudley*, 766 N.W.2d at 624.

IV.

Finally, we address West Vangen's argument that the sentencing judge impermissibly considered West Vangen's assertion of her right to demand a trial in setting her sentence. Although West Vangen did not object during sentencing, we may still consider her argument on appeal. *See State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) ("If we can determine whether a court abused its discretion by using an improper factor without further evidence, a defendant need not object to the use of an improper sentencing factor at the time of sentencing."). A court abuses its discretion when it relies on impermissible factors to sentence a defendant. *See id.* "[A] defect in the sentencing procedure such as the trial court's consideration of impermissible factors" entitles the defendant to a new

sentencing hearing. *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998) (per curiam).

When the State made its sentencing recommendation, it argued West Vangen "had multiple opportunities to take responsibility and do the right thing. It took a day and a half of evidence and argument in the middle of a pandemic for the defendant to be brought to justice in this matter." The judge sentenced West Vangen to thirty days in jail, suspended, explaining the reasons for the sentence included, inter alia, "the defendant's non-acceptance of responsibility in this case." West Vangen argues the court's reliance on her refusal to take responsibility was a clear reference to the State's argument that West Vangen forced the State to prove her guilt at trial instead of pleading guilty.

The sentencing court has broad discretion to impose the sentence it determines is best suited to rehabilitate a defendant and protect society. Iowa Code § 901.5. A district court must consider all relevant factors, including the "nature of the offense, the attending circumstances, the [defendant's] age, character and propensity of the offender, and the chances of reform." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). "A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing. They constitute important steps toward rehabilitation." *State v. Knight*, 701 N.W.2d 83, 87 (Iowa 2005) (quoting *State v. Sims*, 608 A.2d 1149, 1158 (Vt. 1991)). "[A] defendant's lack of remorse is highly pertinent to evaluating [her] need for rehabilitation and [her] likelihood of reoffending"; therefore, a court may consider that factor "as evidenced by facts

other than the defendant's not-guilty plea." *Id.* at 88. "A defendant's lack of remorse can be discerned 'by any admissible statement made by the defendant pre-trial, at trial, or post-trial,' or by 'other competent evidence properly admitted at the sentencing hearing.' " *Id.* at 87–88 (quoting *State v. Shreves*, 60 P.3d 991, 996 (Mont. 2002)).

While lack of remorse is a valid consideration, a defendant's invocation of her right to put the state to its burden of proving the offense to a jury can be given no weight in determining a proper sentence. *See State v. Nichols*, 247 N.W.2d 249, 255 (Iowa 1976). Additionally, the sentencing court "must carefully avoid any suggestions in its comments at the sentencing stage that it was taking into account the fact defendant had not pleaded guilty but had put the prosecution to its proof." *Knight*, 701 N.W.2d at 87 (quoting *Nichols*, 247 N.W.2d at 256).

That the State offered an improper basis for West Vangen's sentence does not mean the sentencing court took the State's bait. During her allocution, West Vangen told the district court: "So, yeah, like he said, I'm going to file an appeal. I didn't do this. So I wouldn't be pressing the issue so much if I did it." West Vangen certainly had the right to appeal her conviction, but in expressing her intent to do so she made clear she was not taking responsibility for the actions the jury found her guilty of committing. The district court cited West Vangen's postconviction failure to take responsibility, not her refusal to enter a guilty plea, in setting her sentence. Her statement came just before the court explained its sentencing decision and was the type of "admissible statement" the district court

was allowed to consider in determining whether West Vangen took responsibility for her actions. *See Knight*, 701 N.W.2d at 87–88. West Vangen is not entitled to a new sentencing hearing.

V.

For the foregoing reasons, we affirm West Vangen's conviction and sentence.

**AFFIRMED.**